Dissenting Statement by LIU, J.
**1 I write to explain why I believe this case merits our review.
Petitioner Joseph H., at age 10, shot and killed his sleeping father and then confessed to a police detective during a custodial interview. A video recording of the interview shows Joseph sitting on a couch next to his stepmother, Krista McCary, whose husband Joseph had just killed. Riverside Police Detective Roberta Hopewell sat in an adjacent chair; she was courteous and not overbearing. At the beginning of the interview, Detective Hopewell informed Joseph of his Miranda rights, and he purported to waive them. (Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.) In a published opinion, the Court of Appeal found that "Joseph's responses indicated he understood" his Miranda rights and that he validly waived his rights "despite his young age, his ADHD [attention deficit hyperactivity disorder ], and low-average intelligence." (In re Joseph H. (2015) 237 Cal.App.4th 517, 535, 188 Cal.Rptr.3d 171.)
In 2011, Joseph was one of 613 children under the age of 12 arrested for a felony in California. (Cal. Dept. of Justice, Juvenile Justice in California (2011) p. 59, table 4.) This case raises an important legal issue that likely affects hundreds of children each year: whether and, if so, how the concept of a voluntary, knowing, and intelligent Miranda waiver can be meaningfully applied to a child as young as 10 years old.
A Miranda waiver, to be valid, must be "made voluntarily, knowingly and intelligently." (Moran v. Burbine (1986) 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410.) The waiver must be made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." (Ibid. ) In assessing the validity of a waiver, a reviewing court must "conduct an independent review of the trial court's legal determination" of "whether the Miranda waiver was voluntary, knowing, and intelligent under the totality of circumstances surrounding the interrogation." (People v. Williams (2010) 49 Cal.4th 405, 425, 111 Cal.Rptr.3d 589, 233 P.3d 1000, alterations omitted; see People v. Whitson (1998) 17 Cal.4th 229, 236, 70 Cal.Rptr.2d 321, 949 P.2d 18 [conducting "independent review of the evidence" in upholding trial court's finding of valid waiver].)
Juveniles, like adults, may waive their Miranda rights. (People v. Lara (1967) 67 Cal.2d 365, 389, 62 Cal.Rptr. 586, 432 P.2d 202 (Lara ); In re Gault (1967) 387 U.S. 1, 55, 87 S.Ct. 1428, 18 L.Ed.2d 527.) Yet Miranda waivers by juveniles present special concerns. The United States Supreme Court has affirmed the "commonsense" conclusion that "children 'generally are less mature and responsible than adults' [citation]; that they 'often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them' [citation]; that they 'are more vulnerable or susceptible to ... outside pressures' than adults. [Citation.] Addressing the specific context of police interrogation, we have observed that events that 'would leave a man cold and unimpressed can overawe and overwhelm *2 a lad in his early teens.' " (J.D.B. v. North Carolina (2011) 564 U.S. 261, ----, 131 S.Ct. 2394, 2403, 180 L.Ed.2d 310 (J.D.B. ).) The "very real differences between children and adults" must be factored into any assessment of whether a child validly waived his Miranda rights. (Id. at p. ----, 131 S.Ct. at p. 2408.) "When a juvenile's waiver is at issue, consideration must be given to factors such as 'the juvenile's age, experience, education, background, and intelligence, and ... whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.' " (People v. Nelson (2012) 53 Cal.4th 367, 375, 135 Cal.Rptr.3d 312, 266 P.3d 1008.) **2 It is not uncommon for California courts to find valid Miranda waivers by children 15 years old or older. (See, e.g., Nelson, supra, 53 Cal.4th at p. 382, 135 Cal.Rptr.3d 312, 266 P.3d 1008 [15-year-old] ; In re Anthony J. (1980) 107 Cal.App.3d 962, 971, 166 Cal.Rptr. 238 [15-year-old].) There are also cases finding valid Miranda waivers by 14-year-olds. (See In re Jessie L. (1982) 131 Cal.App.3d 202, 215, 182 Cal.Rptr. 396 ; In re Abdul Y. (1982) 130 Cal.App.3d 847, 867, 182 Cal.Rptr. 146.) In People v. Lewis (2001) 26 Cal.4th 334, 384-385, 110 Cal.Rptr.2d 272, 28 P.3d 34, this court found a valid Miranda waiver by a 13-year-old. And I have found one published case upholding a Miranda waiver by a 12-year-old. (In re Charles P. (1982) 134 Cal.App.3d 768, 772, 184 Cal.Rptr. 707.)
Apart from this case, there does not appear to be any California decision upholding a Miranda waiver by a child younger than 12. The one published case to address a Miranda waiver for a child in this age range, In re Michael B. (1983) 149 Cal.App.3d 1073, 1084-1086, 197 Cal.Rptr. 379, concluded that the waiver by a nine-year-old was invalid.
There are few out-of-state cases addressing Miranda waivers by such young children. In In re Joshua David C. (1997) 116 Md.App. 580, 698 A.2d 1155, which involved a 10-year-old, the court noted that the officer conducting the interview "essentially conceded that, due to his age, appellant probably did not understand his rights" and concluded that the state failed to show the child " 'had the mental capacity to comprehend the significance of Miranda and the rights waived.' " (Id. at pp. 1162, 1163.) While recognizing that the interviewing officer had "superficially satisfie[d] Miranda 's dictates," the court said: " 'But in the case of a child of age ten years, is that enough? Did he realize what services an attorney could perform for him? Did he understand that he was incriminating himself? ... Those questions and others lead us to believe that [appellant's] waiver of Miranda was almost, if not totally, meaningless.' " (Id. at p. 1163 ; see also Matter of Robert O. (N.Y.Fam.Ct.1981) 109 Misc.2d 238, 439 N.Y.S.2d 994, 1004 [invalidating Miranda waiver of a 10-year-old under federal law because the totality of the circumstances showed the child "lacked the capacity and ability to comprehend the Fifth Amendment privilege of self-incrimination and the right to counsel and was unable to understand the concept of waiver"].)
I am aware of only one reported case upholding a Miranda waiver by a child as young as 10. (W.M. v. State (Fla.Dist.Ct.App.1991) 585 So.2d 979, 983 (W.M. ).) In that divided decision, the majority began by saying, "We have some difficulty with the proposition that a 10-year-old child could ever understand, in the sense that a mature adult could, the consequences of waiving his constitutional rights to silence and counsel, and of giving a statement *3 about the crimes charged against him." (Id. at p. 980.) But the majority believed it could not say the trial court had erred in its finding of a valid waiver, noting (without elaboration) that "[t]he detectives explained to the child in language to make sure the child understood the warnings." (Id. at p. 983.) The dissenting judge said, "Even recognizing that there is no per se rule against juvenile confessions, at the lowest end of the age spectrum there must be some ages where no confession will ever be admissible. It seems to me that, on age, I.Q. and learning disability alone, this child is at the outer edges of the universe of those who are capable as a matter of law of validly confessing to crimes. Indeed he is, even the majority might concede, barely at the age when reason begins." (Id. at p. 985 (dis. opn. of Farmer, J.).)
In this case, Detective Hopewell explained to Joseph his Miranda rights and elicited his waiver in the following colloquy:
HOPEWELL: Okay. Now, I'm going to read you something and it's-it's called your Miranda Rights. And, I know you don't understand really what that is. But, that's why your mom's here. Okay? And, she's gonna listen to it and then, she's going to give me your answers. Okay? If you want to answer for you, that's great too. Okay? If you don't understand something, w-when I state something, I want you to tell me. I don't know what you're talking about or I don't understand.
JOSEPH: All right.
**3 HOPEWELL: Okay? All right. Right now, you know you're here because of what happened to your dad?
JOSEPH: Yeah.
HOPEWELL: All right. So, you have the right to remain silent. You know what that means?
JOSEPH: Yes, that means that I have the right to stay calm.
HOPEWELL: That means y-you do not have to talk to me.
JOSEPH: Right.
HOPEWELL: Okay? And, anything you say, will be used against you in a court of law. Do you know what that means? That means that if we have to go to court and tell the judge what, what you did, that whatever you're gonna tell me today, I can tell the judge, "This is what Joseph told me." Okay?
JOSEPH: Okay.
HOPEWELL: You understand that?
JOSEPH: Yeah.
HOPEWELL: Okay. And, you have the right to talk to a lawyer and have a lawyer here with you-an attorney-before I ask you any questions. Do you understand that? And, you shake your head upside uh what does that ...
JOSEPH: Yes.
HOPEWELL: ... mean? What does that mean to you?
JOSEPH: It means, don't talk until that means to not talk till the attorney or ...
HOPEWELL: That means, you have the choice. That you can talk to me with your mom here or you can wait and have an attorney before you talk to me.
JOSEPH: Okay.
HOPEWELL: Okay? But it's your choice and it's your mom's choice. Okay?
JOSEPH: Okay.
HOPEWELL: All right. And, if you can't afford one-'cause I know you don't have a job, no money-um, the court will appoint one, an attorney for you. Before I talk to you about anything. Do you understand that?
JOSEPH: Yeah.
*4 HOPEWELL: Okay. So, with you-you got your mom here. I have some questions that I do want to ask you. What happened with your dad. Do you want to talk to me and tell me what happened?
JOSEPH: Um, first, do you want to know what hap-what we were doing before?
HOPEWELL: Yeah, I want you to tell me everything that was going on. So, do you want to talk to me about that?
JOSEPH: (Nods head in the affirmative.)
[End of colloquy.]
The high court has instructed that "admissions and confessions of juveniles require special caution" and that " 'when, as here, a mere child-an easy victim of the law-is before us, special care in scrutinizing the record must be used.' " (In re Gault, supra, 387 U.S. at p. 45, 87 S.Ct. 1428 [involving a 15-year-old], quoting Haley v. Ohio (1948) 332 U.S. 596, 599, 68 S.Ct. 302, 92 L.Ed. 224 [also involving a 15-year-old].) Here the petition for review and supporting letters contend that as a matter of "social science and cognitive science" as well as "what 'any parent knows'-indeed, what any person knows-about children generally" (J.D.B., supra, 564 U.S. at p. ---- & fn. 5, 131 S.Ct. at p. 2403 & fn. 5 ), it is doubtful that Joseph understood or was capable of understanding the nature of Miranda rights and the consequences of waiving those rights. The petition further contends that the presence of Joseph's stepmother Krista during the interview does not aid the validity of the waiver because Krista had a conflict of interest and, in any event, sat silently and gave no advice as Joseph waived his rights.
Having reviewed the transcript and video of the interview, I believe the issue of whether Joseph validly waived his Miranda rights subsumes several questions worthy of our review: (1) whether there is an age below which the concept of a voluntary, knowing, and intelligent waiver has no meaningful application, (2) whether and, if so, how the Miranda warnings and waiver decision can realistically be made intelligible to very young children, and (3) what role parents, guardians, or counsel should play in aiding a valid waiver decision by such children, and under what conditions a parent or guardian **4 would be unable to play that role. In Lara, we said "the immaturity of most minors will make it desirable for those in custody to have the advice of counsel or other responsible adult," but we held that "the presence or consent of counsel or other responsible adult" is not invariably a requirement for a valid Miranda waiver by a juvenile. (Lara, supra , 67 Cal.2d at pp. 382, 383, 62 Cal.Rptr. 586, 432 P.2d 202.) However, Lara involved one defendant who was "18 years old" and another who was "38 days short of his 18th birthday" at the time of their custodial interrogations. (Id. at p. 376, fn. 4, 62 Cal.Rptr. 586, 432 P.2d 202.) In affirming the applicability of the totality-of-the-circumstances test to juvenile waivers, Lara discussed numerous cases involving minors as young as 14 but nowhere considered waivers by children in Joseph's age range. (See id. at pp. 381-390, 62 Cal.Rptr. 586, 432 P.2d 202.) Lara also predates by several decades the growing body of scientific research that the high court has repeatedly found relevant in assessing differences in mental capabilities between children and adults. (See Miller, supra, 567 U.S. at p. ----, 132 S.Ct. at p. 2464 ; J.D.B., supra, 564 U.S. at p. ----, fn. 5, 131 S.Ct. at p. 2403, fn. 5 ]; Graham v. Florida (2010) 560 U.S. 48, 68, 130 S.Ct. 2011, 176 L.Ed.2d 825 ; Roper v. Simmons (2005) 543 U.S. 551, 569-570, 125 S.Ct. 1183, 161 L.Ed.2d 1.) A key issue in this case is whether Lara 's rule that a valid Miranda waiver *5 does not invariably require the presence of counsel or an interested adult applies to children under age 14, including children as young as 10. (Cf. J.D.B., at p. ----, 131 S.Ct. at p. 2407 ] ["a 7-year-old is not a 13-year-old and neither is an adult"].)
In evaluating whether this case merits our review, I note that other state high courts have addressed these issues by formulating standards and procedures specific to young children. (See, e.g., State v. Presha (2000) 163 N.J. 304, 748 A.2d 1108, 1117-1118 [adopting a "bright-line rule" that "[w]hen the juvenile is under the age of fourteen, the adult's absence will render the young offender's statement inadmissible as a matter of law-unless the adult is truly unavailable, in which case, the voluntariness of the waiver should be determined by considering the totality of circumstances"]; Matter of B.M.B. (1998) 264 Kan. 417, 955 P.2d 1302, 1312-1313 [concluding that for children under 14 "the totality of the circumstances is not sufficient to ensure that the child makes an intelligent and knowing waiver of his rights," and holding that "a juvenile under 14 years of age must be given an opportunity to consult with his or her parent, guardian, or attorney as to whether he or she will waive his or her rights to an attorney and against self-incrimination"]; Commonwealth v. A Juvenile (No. 1) (1982) 389 Mass. 128, 449 N.E.2d 654, 657 ["We conclude that, for the Commonwealth successfully to demonstrate a knowing and intelligent waiver by a juvenile, in most cases it should show that a parent or an interested adult was present, understood the warnings, and had the opportunity to explain his rights to the juvenile so that the juvenile understands the significance of waiver of these rights. For the purpose of obtaining the waiver, in the case of juveniles who are under the age of fourteen, we conclude that no waiver can be effective without this added protection.... For cases involving a juvenile who has reached the age of fourteen, there should ordinarily be a meaningful consultation with the parent, interested adult, or attorney to ensure that the waiver is knowing and intelligent. For a waiver to be valid without such a consultation the circumstances should demonstrate a high degree of intelligence, experience, knowledge, or sophistication on the part of the juvenile."].)
We have not extensively examined the issue of juvenile Miranda waivers since our decision in Lara almost a half-century ago. Although we are barred from adopting an exclusionary rule that is not required by the federal Constitution (Cal. Const. art. I, § 28, subd. (f)(2)), whether federal constitutional law requires the type of safeguards that other courts have adopted for children as young as Joseph is a question that neither the high court nor this court has examined. As noted, there were 613 felony arrests of children under age 12 in California in 2011, the year Joseph killed his father. In 2012, there were 523 such arrests; in 2013, there were 449; and in 2014, there were 381. (Cal. Dept. of Justice, Juvenile Justice in California (2012- **5 2014) p. 59, table 4; cf. Kim et al., The School-to-prison Pipeline: Structuring Legal Reform (2010).) The proper application of Miranda to children in Joseph's age range likely affects hundreds of cases each year, even though few such cases result in a trial and appeal. For these reasons, I vote to grant review.
Finally, it bears mention that consideration of special safeguards for young children need not await judicial action. Many states have found the issue worthy of legislative attention. (See 705 Ill.Comp.Stat. 405/5-170 [child under age 13 suspected of serious crimes must be represented by counsel throughout the entire custodial process, including the reading of Miranda *6 rights]; Iowa Code § 232.11 [child under 16 cannot waive right to counsel without written consent of the child's parent]; Mont.Code § 41-5-331 [child under 16 can waive rights only with a parent's agreement; when a parent does not agree, the child can waive only after consulting with counsel]; N.M. Stat. § 32A-2-14(F) [prohibiting admission of a statement by a child under 13 in the adjudicatory phase of a delinquency proceeding, and presuming that a child of age 13 or 14 is incapable of making a valid Miranda waiver]; Wash. Rev.Code § 13.40.140(10) [parent must waive rights when a child is under 12]; Colo.Rev.Stat. § 19-2-511 [for children under 18, a parent or the child's counsel must be present and informed of the child's rights for any custodial statement to be admissible; the child and parent may waive parental presence in writing]; Conn. Gen.Stat. § 46b-137 [no statement of a child made during custodial interrogation is admissible in juvenile court unless a parent is present and advised of the child's rights]; Ind.Code § 31-32 [child's rights can be waived only by a parent or counsel unless the child has been emancipated]; N.C. Gen.Stat. § 7B-2101 [child under 14 cannot waive Miranda rights unless a parent or attorney is present]; Okla. Stat. tit. 10A, § 2-2-301 [advisement of rights of child 16 or younger attendant to custodial interrogation must take place in the presence of a parent, guardian, or counsel].) Our Legislature may wish to take up this issue in light of this court's decision not to do so here. (See Cal. Const. art. I, § 28, subd. (f)(2).)
CUÉLLAR, J., concurs.