Filed 11/10/16 (review dismissed 1/31/18; reposted with Supreme Court order and statement)

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E064557 |
| v. | (Super.Ct.No. INF1401895) |
| DAVID BUCKLEY DOYLE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Richard A. Erwood, Judge. Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Theodore M. Cropley and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

While driving under the influence of alcohol and drugs, defendant and appellant David Buckley Doyle swerved into oncoming traffic and hit Mark Joseph Norton (the victim) who was riding a motor scooter. The victim died immediately. Defendant drove away from the scene with the scooter lodged under his vehicle. He was apprehended one mile from the scene of the accident. Defendant was found guilty after a court trial of vehicular manslaughter, driving under the influence of alcohol and drugs causing great bodily injury, and fleeing the scene of an accident involving great bodily injury or death.

Defendant makes one claim on appeal that he was not fully advised of his constitutional rights to a trial by 12 jurors prior to waiving his right to a jury trial and proceeding to a court trial.

## FACTUAL AND PROCEDURAL HISTORY

A.     <u>PROCEDURAL HISTORY</u>

Defendant was charged in count 1 of an information filed by the Riverside County District Attorney's Office with gross vehicular manslaughter while intoxicated within the meaning of Penal Code section 191.4, subdivision (a) and the allegation that he fled the scene of the accident within the meaning of Vehicle Code section 20001, subdivision (c). In count 2, defendant was charged with driving under the combined influence of alcohol and drugs causing death or great bodily injury within the meaning of Vehicle Code section 23153, subdivision (f) and the allegation that he personally inflicted great bodily injury or death within the meaning of Penal Code section 12022.7, subdivision (a). In count 3, defendant was charged with leaving the scene of an accident in violation of Vehicle Code section 20001, subdivision (a). Defendant waived his right to a jury trial.

The trial court found defendant guilty of all three counts in the information and found all of the enhancements true.

At the time of sentencing, the trial court dismissed the lesser included offense in count 2 and amended count 3 to a violation of Vehicle Code section 20001, subdivision (b)(2). Defendant was sentenced to six years in state prison on count 1, plus a consecutive sentence of five years for the enhancement on count 1. The sentence on count 3 was stayed. He received a total state prison sentence of 11 years.

B.     FACTUAL HISTORY

Several witnesses testified they were driving on Indian Canyon Drive in Palm Springs on July 4, 2014, at around 11:30 a.m. when a pickup truck driven by defendant crossed over the center line and into oncoming traffic. Defendant hit the victim, who was riding a scooter, head on. The victim was thrown from the scooter and landed partially on the sidewalk. Defendant drove away from the scene with the scooter lodged under his truck. Sparks were coming from the scooter hitting the ground. The victim died as a result of the impact.

Palm Springs Police Officer Cary Carrillo was on duty at approximately 11:40 a.m. on July 4, 2014. He responded to a report of an accident involving a pickup truck and a motorcycle at the corner of Granvia Valmonte and North Indian Canyon Drive in Palm Springs. When he arrived, there were several pedestrians on the corner of the intersection who directed him to where the pickup truck had left the scene.

Officer Carrillo drove north and observed gouge marks in the roadway. He followed the gouge marks to a parking lot located at 1433 North Indian Canyon.

3

Defendant was standing next to his pickup truck. The scooter was attached to the front of the truck. Officer Carrillo asked defendant if he was aware he had been in a traffic collision. Defendant took some time to answer but then asked if the victim was okay. Defendant did not recall hitting the scooter but saw it under his truck after he stopped. There appeared to be splattered brain matter on the truck's windshield. The windshield on the driver's side was cracked and the side window was missing.

Officer Carrillo noted that defendant appeared intoxicated because his eyelids were heavy, he appeared to be falling asleep as he stood and spoke with him, he smelled of alcohol, his speech was slurred, and at one point Officer Carrillo had to grab him to keep him from falling to the ground. Officer Carrillo determined that he would be unable to perform any field sobriety tests. Officer Carrillo was of the opinion that defendant was under the influence and could not safely operate a vehicle.

Defendant was searched. Inside one of his pockets he had a prescription bottle labeled Hydrocodone with pills. In another pocket he had a pipe, which contained white residue; it was the kind of pipe used to smoke methamphetamine. Defendant's blood was drawn at the hospital—as he was being transported to the jail.

Defendant was interviewed at the police station. Defendant woke up that morning around 6:00 a.m. and had bacon, eggs and toast for breakfast. He put some alcohol in his coffee. He took muscle relaxers for a broken femur he had suffered two years prior. He then headed to the store to buy some snacks. He was driving his pickup truck. Defendant only recalled that something hit his truck but could not recall how it had

4

happened. Defendant admitted he did not get out of his truck to help the victim. He did not notice the scooter lodged under his truck until he parked in the parking lot.

Officer Guillermo Fernandez was a drug recognition expert. He reviewed the police report and the toxicology reports for defendant. Officer Fernandez noted that defendant had appeared sleepy and was nodding off during the time of contact with Officer Carrillo. This type of behavior was common in those who used heroin and opiate–based medication such as Hydrocodone.

Defendant's toxicology reports showed he had a large amount of Diazepam in his system, which was a central nervous system depressant. He also had alcohol, Hydrocodone and benzodiazepines in his system. He also had methamphetamine in his system. Based on Officer Fernandez's review of the reports, he determined that defendant was under the influence of several drugs. These drugs would impact defendant's ability to respond. It would cause him to be in a "mental fog." It was unsafe for defendant to operate a motor vehicle. He would not have been able to maintain his vehicle in one lane based on being drowsy. The alcohol would have been a depressant.

## DISCUSSION

Defendant's sole contention on appeal is that the trial court failed to properly advise him of his right to have 12 persons serve on a jury, and that those 12 jurors had to make a unanimous decision as to his guilt prior to waiving his right to a jury trial. Such inadequate advisement of his right to a jury trial requires automatic reversal.

5

A.     ADDITIONAL FACTUAL BACKGROUND

On September 9, 2014, the trial court declared a doubt as to defendant's competency and ordered that he be evaluated by a psychiatrist. Dr. William Jones was appointed to evaluate defendant. Defendant was declared competent on October 23, 2014.

On July 15, 2015, the parties appeared for trial. Defendant's counsel stated that defendant had not yet entered a waiver of his right to a jury trial. Defendant's counsel was concerned because defendant had not been taking his prescribed antidepressant medication. Defendant's counsel stated, "He's not prepared to make any decisions today about whether or not he's willing to waive his right to a jury or if he, you know, basically wants the jury trial." Defendant's counsel requested a continuance so that defendant could be given his medication before he made the determination to waive a jury trial. The People agreed to the continuance and also were in agreement with the waiver of a jury trial, if that was what defendant desired. The trial court ordered that defendant receive his medication. The matter was continued for defendant to be stabilized on his medication.

The following exchanged then occurred on the day that the parties returned to court:

"[Defense Counsel]: I did have an opportunity to speak with [defendant] last night and this morning, and it's my understanding that he's prepared to enter a waiver of his Constitutional right to a jury trial and, instead, have a bench trial.

The Court: Okay. [¶] [Defendant.]

6

Defendant: Yes, sir.

The Court: It's indicated to the Court that you're waiving your right to a jury trial and having, instead, a bench trial. [¶] Is that what you wish to do?

Defendant: Yes, sir.

The Court: You understand that the burden of proof will be the same if you go before a jury, it's proof beyond a reasonable doubt; court trial, same burden of proof, proof beyond a reasonable doubt. [¶] Do you understand that?

Defendant: Yes, sir.

The Court: You understand that your other Constitutional rights will be the same; that is, you have the right to subpoena witnesses, to testify on your behalf at no cost to yourself. You have the right to take the stand and testify, or refuse to take the stand and testify, no matter what your wishes are. You have the right to have your lawyer present and cross-examine the witnesses against you. [¶] Do you understand all those rights?

Defendant: Yes, sir, I do."

Defendant's counsel and the People joined in the waiver. The trial court proceeded with a court trial.

B. ANALYSIS

"A defendant in a criminal prosecution has a right to a trial by jury under both the federal Constitution [citation] and our state Constitution." (*People v. Ernst* (1994) 8 Cal.4th 441, 444-445.) Under the state Constitution, "'Trial by jury is an inviolate right and shall be secured to all. . . . A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel. . . .

7

[¶] In criminal actions in which a felony is charged, the jury shall consist of 12 persons. In criminal actions in which a misdemeanor is charged, the jury shall consist of 12 persons or a lesser number agreed on by the parties in open court.' Our state Supreme Court has 'recognized that this state constitutional right is fundamental.'" (*People v. Traugott* (2010) 184 Cal.App.4th 492, 499-500.)

"To be valid, a defendant's waiver of the right to a jury must also be 'knowing and intelligent, that is, ""'made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,"''' as well as voluntary ""'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'"''''" (*People v. Weaver* (2012) 53 Cal.4th 1056, 1071-1072.) "No particular language is necessary to waive a jury trial so long as the words employed disclose in their ordinary, common sense, fair meaning and context an intention to be tried by the court sitting without a jury." (*People v. Martin* (1980) 111 Cal.App.3d 973, 982.)

"[T]he denial of a defendant's constitutional right to jury trial on a charged offense constitutes structural error that requires reversal without consideration of the strength of the evidence." (*People v. French* (2008) 43 Cal.4th 36, 52, fn. 8.)

Here, the trial court was advised by defendant's counsel that she had discussed the issue of waiving a jury with defendant, after he was stabilized on his medication, and that he was prepared to waive that right. The trial court then informed defendant that the burden of proof—beyond a reasonable doubt—would be the same if he chose a jury trial or a court trial. The trial court also explained that his other rights, such as his right to

8

subpoena witnesses, his right to take the stand and testify, and his right to have his lawyer present and cross-examine the witnesses against him would all remain the same. Defendant acknowledged that he understood all of these rights.

It is true that defendant was never advised that he was entitled to a unanimous verdict by 12 jurors. However, as stated, there is no requirement that the trial court explain to a defendant every aspect that he is giving up in entering a waiver to a jury trial. (*People v. Martin*, *supra*, 111 Cal.App.3d at p. 982; see also *People v. Wrest* (1992) 3 Cal.4th 1088, 1103 [rejecting that there is a specific admonition that must be recited to a defendant in order for a valid waiver of a jury trial].) Defendant was made aware of his right to be found guilty beyond a reasonable doubt by either a jury or the court, and that he would still have the same rights of cross-examination and to testify at a court trial. Defendant waived his right to a jury trial without hesitation.

Moreover, as stated by the People, defendant was represented by counsel at the time that he entered his waiver. In *People v. Acosta* (1971) 18 Cal.App.3d 895, the defendant argued he did not knowingly and intelligently waive his right to a jury trial. He insisted he was only advised that he had a right to have the case heard by a jury and no other rights were explained to him. On appeal, he argued that "he did not know what a jury is or what it meant to waive trial by jury and to be tried by a judge." (*Id.* at pp. 900-902.) The appellate court found "We are not aware of any rule of law that entitles a defendant who is represented by counsel and who has discussed waiver of a jury trial with his counsel, as here, to have the court advise him of the merits or the disadvantages

9

of a trial by jury, as against a court trial. . . . It is enough that the court determine that the defendant understands that he is to be tried by the court and not a jury." (*Id.* at p. 902.)

Here, defendant's counsel advised the trial court she had discussed defendant's waiver of a jury trial with him on two occasions. There is nothing in the record to support that defendant was confused as to the right to a jury trial or that he did not knowingly waive that right.

Defendant has cited to several intermediate federal cases, e.g. *United States v. Gonzalez-Flores* (9th Cir.2005) 418 F.3d 1093, 1102-1103; *United States v. Duarte-Higareda* (9th Cir. 1997) 113 F.3d 1000, 1002; *Marone v. United States* (2d.Cir. 1993) 10 F.3d 65, 68; and *U.S. v. Delgado* (1981) 635 F.2d 889, 890 to support his claim that the waiver was inadequate in this case. These cases establish that a waiver is voluntary, knowing and intelligent if the defendant is informed that 12 members of the community compose a jury, the defendant can take part in jury selection, that the jury verdict must be unanimous and that the trial court will solely decide guilt or innocence if the defendant waives a jury trial. (*Duarte-Higareda*, at p. 1002; see also *Gonzalez-Flores*, at pp. 1102-1103.) However, even the federal court has stated, "[t]hough we have declined 'to impose an absolute requirement of such a colloquy in every case,' [citation], in its absence we will find a valid waiver of the jury trial right only where there are strong indicia that the waiver was voluntary, knowing, and intelligent." (*Gonzalez-Flores*, at p. 1103.) Moreover, the California Supreme Court has refused to adopt these specific admonitions to find a waiver of a jury trial is knowingly and intelligently made. (*People v. Weaver*, *supra*, 53 Cal.4th at pp. 1072-1074.) We have found no case, and defendant

10

has provided no controlling authority, that the failure to advise defendant that the jury would be comprised of 12 jurors who must unanimously find his guilt renders the waiver of jury trial inadequate.

We find that defendant's waiver of jury trial in this case was voluntary, knowing and intelligent.

## DISPOSITION

We affirm the judgment.

CERTIFIED FOR PUBLICATION

MILLER
J.

We concur:

HOLLENHORST
Acting P. J.

CODRINGTON
J.

11

Court of Appeal, Fourth Appellate District, Division Two - No. E064557

**S238666**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

THE PEOPLE, Plaintiff and Respondent,

v.

DAVID BUCKLEY DOYLE, Defendant and Appellant.

_____

Review in the above-captioned matter, which was granted and held for *People v. Sivongxxay* (2017) 3 Cal.5th 151, is dismissed.  (Cal. Rules of Court, rule 8.528(b)(1).)

Liu, J., is of the opinion briefing should be ordered and the matter retained for decision by this court.

                    Cantil-Sakauye
                    *Chief Justice*


                    Chin
                    *Associate Justice*


                    Corrigan
                    *Associate Justice*


                    *Associate Justice*


                    Cuéllar
                    *Associate Justice*


                    Kruger
                    *Associate Justice*


                    *Associate Justice*

**DISSENTING STATEMENT BY LIU, J.**


Petitioner David Buckley Doyle was convicted of vehicular manslaughter, driving under the influence of alcohol and drugs causing great bodily injury, and fleeing the scene of an accident involving great bodily injury or death. He was sentenced to 11 years in prison. His sole claim on appeal is that he was not fully advised of his constitutional right to a jury trial before waiving that right and proceeding to a bench trial.

Before accepting his waiver, the trial court conducted a brief colloquy with Doyle. The colloquy did not inform him of any differences between a jury trial and a bench trial. Nor did the trial court ask Doyle whether he had had adequate opportunity to discuss the waiver decision with counsel or whether he understood the nature of the right he was purporting to waive. The Court of Appeal upheld the waiver, relying on the rule we first stated in *People v. Langdon* (1959) 52 Cal.2d 425 (*Langdon*) that a trial court's failure to "explain[] to [a] defendant the nature and possible consequence of his action in waiving a jury trial" is not grounds for finding the waiver invalid where the defendant "was represented by counsel, and he fails to indicate anything in the record to show that either he or his counsel was misled as to the result which might occur from his waiving a jury trial." (*Id.* at p. 432.)

As explained below, we have not relied on the *Langdon* rule to uphold a jury trial waiver in nearly 50 years. Instead of requiring a defendant who was represented by counsel to affirmatively demonstrate that his waiver was not knowing and intelligent, our case law has upheld the waiver of a jury trial "only when the record affirmatively demonstrates it was knowing and intelligent." (*People v. Daniels* (2017) 3 Cal.5th 961, 991 (*Daniels*) (lead opn. of Cuéllar, J.).) This approach reflects our recognition that the constitutional right to a jury trial is

1

"fundamental" and cannot be validly waived unless the defendant has " ' " 'a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.' " ' " (*People v. Collins* (2001) 26 Cal.4th 297, 305 (*Collins*); see *Duncan v. Louisiana* (1968) 391 U.S. 145, 149 ["trial by jury in criminal cases is fundamental to the American scheme of justice"].)  Because there is serious reason to question the continuing vitality of the *Langdon* rule, I would order briefing and decide the merits of this case instead of dismissing review.

This case is the third time in recent months that we have been confronted with a troublingly spare colloquy in evaluating the validity of a criminal defendant's jury trial waiver.  (See *Daniels*, *supra*, 3 Cal.5th 961; *People v. Sivongxxay* (2017) 3 Cal.5th 151 (*Sivongxxay*).)  This court has offered "general guidance" for ensuring that a waiver decision is knowing and intelligent, but it has decided against prescribing specific rules or procedures for constitutional compliance.  (*Sivongxxay*, at p. 169.)  Although the court today declines to revisit this issue, consideration of appropriate safeguards "need not await judicial action." (*In re Joseph H.* (Cal. 2015) 367 P.3d 1, 5 (statement by Liu, J., dissenting from denial of review).)  The importance and recurring nature of the issue suggest it may be worthy of examination by the Judicial Council or the Legislature.

## I.

Facing serious felony charges arising from his role as the driver in a hit-and-run collision that killed one victim, Doyle waived his right to a jury trial after the following colloquy:

"[Defense Counsel]:  I did have an opportunity to speak with Mr. Doyle last night and this morning, and it's my understanding that he's prepared to enter a waiver of his Constitutional right to a jury trial and, instead, have a bench trial.

"THE COURT:  Okay.  [¶] Mr. Doyle.

"DEFENDANT:  Yes, sir.

2

"THE COURT:  It's indicated to the Court that you're waiving your right to a jury trial and having, instead, a bench trial.  [¶] Is that what you wish to do?

"DEFENDANT:  Yes, sir.

"THE COURT:  You understand that the burden of proof will be the same if you go before a jury, it's proof beyond a reasonable doubt; court trial, same burden of proof, proof beyond a reasonable doubt.  [¶] Do you understand that?

"DEFENDANT: Yes, sir.

"THE COURT:  You understand that your other Constitutional rights will be the same; that is, you have the right to subpoena witnesses, to testify on your behalf at no cost to yourself.  You have the right to take the stand and testify, or refuse to take the stand and testify, no matter what your wishes are.  You have the right to have your lawyer present and cross-examine the witnesses against you.  [¶] Do you understand all those rights?

"DEFENDANT: Yes, sir, I do."

As the transcript indicates, the colloquy mentioned similarities between a jury trial and a bench trial, but did not explain any of the distinctive features of a jury trial.  The trial court did not inform Doyle that a jury consists of 12 persons selected from the community, that all 12 jurors must be unanimous in order to render a verdict, or that he and his attorney may participate in selecting the jurors. Although the trial court asked Doyle whether he understood other constitutional rights that would remain the same in a bench trial, the court never asked whether he understood the nature of the right to a jury trial.  Doyle's counsel noted that she "did have an opportunity to speak with Mr. Doyle last night and this morning," but there is no indication of what was discussed or whether Doyle's opportunity to discuss the waiver with counsel had been adequate.

The Court of Appeal upheld Doyle's waiver as knowing and intelligent, reasoning that "defendant's counsel advised the trial court she had discussed

3

defendant's waiver of a jury trial with him on two occasions" and that "[t]here is nothing in the record to support that defendant was confused as to the right to a jury trial or that he did not knowingly waive that right." (*People v. Doyle* (2016) 5 Cal.App.5th 440, 447 (*Doyle*).)  The court relied on *People v. Acosta* (1971) 18 Cal.App.3d 895, which said there is no "rule of law that entitles a defendant who is represented by counsel and who has discussed waiver of a jury trial with his counsel, as here, to have the court advise him of the merits or the disadvantages of a trial by jury, as against a court trial. . . .  It is enough that the court determine that the defendant understands that he is to be tried by the court and not a jury." (*Id.* at p. 902.)  *Acosta*, in turn, cited our decision in *People v. Lookadoo* (1967) 66 Cal.2d 307 (*Lookadoo*), which restated our holding in *Langdon* that "the trial court in a criminal case is not required to explain to a defendant the nature and consequences of his action in waiving a jury trial where he is . . . represented by counsel and fails to show that either he or his counsel has been misled as to the result which might occur from his waiving a jury trial." (*Lookadoo*, at p. 311, citing *Langdon*, *supra*, 52 Cal.2d at p. 432.)

In light of the barebones nature of the colloquy in this case, it is not surprising that the Court of Appeal placed heavy reliance on the rule stated almost 60 years ago in *Langdon*.  But there is strong reason to question the continuing vitality of *Langdon*'s rule that a jury trial waiver by a defendant with counsel is presumed to be knowing and intelligent in the absence of any affirmative indication that the defendant did not understand the nature of the jury trial right. Although we have never expressly disapproved this rule, our case law over the past 50 years shows that it has fallen into desuetude.

We have cited *Langdon* with approval in only three decisions upholding jury trial waivers.  (See *People v. Tijerina* (1969) 1 Cal.3d 41, 46 (*Tijerina*); *Lookadoo*, *supra*, 66 Cal.2d at p. 311; *People v. Golston* (1962) 58 Cal.2d 535,

4

537–539, abrogated on another ground by *People v. Green* (1980) 27 Cal.3d 1, 33.) But in *Lookadoo* and *Golston*, we did not merely rely on the fact that the defendant had counsel; we also noted that the trial court had explained the basic contours of the jury right in a colloquy with the defendant and had ensured the defendant understood that right. (*Lookadoo*, at pp. 311–312 [trial court "went to great lengths to explain the nature and consequences of such a waiver," defense counsel "paraphrased the court's statement to present the matter in even simpler language," and "[t]he judge asked defendant numerous times if he understood the explanations given to him . . . ."]; *Golston*, at p. 539 [trial court told defendant he had the right to a unanimous verdict by all 12 jurors, and defendant answered, "when queried by the trial judge, that he understood what such a waiver meant"].) In *Tijerina*, the defendant "stated that he knew what a jury trial was, and he was also told [by the trial court] that '[T]hat is when twelve people sit over here in the box and hear all the evidence.' " (*Tijerina*, at pp. 45–46; see *id.* at p. 45, fn. 2.) "Under these circumstances," we said, "the court was not required to explain further to defendant the significance of his waiver of a jury trial." (*Id.* at p. 46.)

*Tijerina*, decided in 1969, was the last time we placed any reliance on the *Langdon* rule. Since then, instead of placing the burden on a defendant who was represented by counsel to show his or her waiver was not knowing and intelligent, our decisions have carefully examined the record for affirmative indications that the defendant was aware of the nature of the jury trial right and the consequences of waiving it. In so doing, we have not presumed that an express waiver is knowing and intelligent from the mere fact that a defendant was represented by counsel.

*People v. Miller* (1972) 7 Cal.3d 562 (*Miller*) marks the beginning of this shift. In *Miller,* we noted the "remarkable care exercised by the trial judge in satisfying himself that defendant fully understood the nature and consequences of

5

his proposed course of action, and that any waiver he might make would be both knowing and intelligent. By a detailed series of questions and explanations, the judge established that defendant had discussed the matter at length with his two attorneys; that he knew he had the right to have the case tried by 12 jurors; that he understood the charges against him and the pleas he had entered; that he realized the same judge would determine the issues of guilt, sanity, and penalty; that he was aware of the punishments which could be imposed in this case, including the possibility of a death penalty; and that no promise of special treatment or leniency had been made to him in exchange for his waiver of a jury." (*Id.* at pp. 566–567.)

In upholding the validity of the waiver, *Miller* cited several cases, including *Lookadoo*, as "controll[ing]" precedent. (*Miller*, *supra*, 7 Cal.3d at p. 567.) "In each of those cases," we explained, "the defendant had a limited education and a borderline intelligence, but was represented by counsel and benefited from a detailed examination by the trial court into the nature and consequences of a waiver of jury trial; in each, we held that the defendant was capable of making a knowing and intelligent waiver of that right, and had done so on the record before us." (*Ibid.*) *Miller* did not rely on the portion of *Lookadoo* that affirmed *Langdon*'s rule that an express waiver by a counseled defendant is presumed to be knowing and voluntary unless the record shows otherwise. (See *Lookadoo*, *supra*, 66 Cal.2d at p. 311.) Instead, what *Miller* deemed "controll[ing]" was *Lookadoo*'s reliance on affirmative indications in the record that the defendant not only had counsel but also had "benefited from a detailed examination by the trial court into the nature and consequences of a waiver of jury trial." (*Miller*, at p. 567; see *Lookadoo*, at pp. 311–312.) In describing the controlling feature of *Lookadoo* this way, *Miller* signaled a departure from the *Langdon* rule.

After *Miller*, in every case where we have examined whether a defendant represented by counsel acted knowingly and intelligently in waiving a jury trial in

6

favor of a bench trial on guilt or capital sentencing, we have focused our analysis on whether the record affirmatively indicated that the defendant was informed of the nature of a jury trial and the consequences of waiver. (See *Sivongxxay*, *supra*, 3 Cal.5th at pp. 167–168, 174, 189–190; *People v. Cunningham* (2015) 61 Cal.4th 609, 636–637 (*Cunningham*); *People v. Weaver* (2012) 53 Cal.4th 1056, 1070–1071 (*Weaver*); *Collins*, *supra*, 26 Cal.4th at pp. 307–309; *People v. Scott* (1997) 15 Cal.4th 1188, 1208–1210 (*Scott*); *People v. Diaz* (1992) 3 Cal.4th 495, 570–571 (*Diaz*); *People v. Robertson* (1989) 48 Cal.3d 18, 37–38 (*Robertson*); *People v. Deere* (1985) 41 Cal.3d 354, 359–360 (*Deere*).)

In *Deere*, the defendant and his counsel waived a jury trial at the penalty phase of a capital trial. We observed that defense counsel informed the court that the "defendant 'knows what would happen if the case went to jury trial, and he feels that the expense of a circus or charade of a trial is not right for him or for the community.' " (*Deere*, *supra*, 41 Cal.3d at p. 359.) Further, "[d]efense counsel explained at length to the court why he permitted his client . . . to waive a penalty jury," and there was no indication that these statements by defense counsel were made outside of the defendant's presence. (*Id.* at p. 357.) Under these circumstances, the defendant's only complaint as to whether his waiver was knowing and intelligent was that "he was never told his waiver of a penalty jury would necessarily preclude an independent reevaluation of the verdict by the judge." (*Id.* at p. 359.) We said this claim was "frivolous" because the "defendant is deemed to have known that by waiving a jury trial he would lose his statutory right to a penalty decision by both the jury and the judge." (*Ibid.*)

In *Robertson*, we upheld the defendant's penalty phase waiver on the basis of ample indications in the record that the waiver was knowing and intelligent. (*Robertson*, *supra*, 48 Cal.3d at pp. 35–38.) We specifically held that "[a]lthough the court would have done better to explain to defendant the effect of a jury

7

deadlock, its omission does not invalidate defendant's waiver" (*id.* at pp. 37–38) given the fact that he "was represented by two apparently competent counsel who over the course of several days discussed with him 'at length' the consequences and nature of his proposed waiver. Absent an assertion or evidence to the contrary, we presume that competent counsel would have informed defendant of the effect of a jury deadlock" (*id.* at p. 36). We went on to observe: "Counsel in defendant's presence expressed on the record their sound tactical reasons for advising defendant to waive a jury and consenting to the waiver. The court, before accepting defendant's waiver, engaged him in an extensive and thorough voir dire expressly directed to determining his waiver was knowing, intelligent and voluntary." (*Id.* at p. 37, fn. omitted; see *id.* at p. 37, fn. 5 [reprinting the waiver colloquy].) Among several advisements given during the lengthy colloquy, the trial court said to the defendant: " 'You understand . . . that if you do waive jury and submit it to the Court, the Court will act solely. If you have a jury trial, before a verdict can be returned either way, it requires unanimous agreement of all 12 jurors; do you understand that?' " (*Ibid.*) The defendant answered, " 'Yes, Your Honor.' " (*Ibid.*) As to the defendant's claim that the trial court "failed to conduct the hearing on his jury waiver with the 'special attention and care' that he asserts his allegedly 'borderline intelligence' merited," we said "[t]he record is otherwise." (*Id.* at p. 38.)

In *Diaz*, we upheld a penalty phase jury trial waiver where the trial court had advised the defendant that the jury's " 'first function is to decide the question of your guilt or innocence. Then the second function, similarly, assuming there are 12 of them and they would unanimously agree that you were guilty, then you would have 12 jurors who must unanimously agree as to the punishment. [¶] They have a choice, life without possibility of parole or death. . . . And you'll be giving up that right.' " (*Diaz, supra*, 3 Cal.4th at p. 564.) "Defendant answered, 'I'm

8

giving it up.' " (*Ibid.*)  "Defendant also told the court that he had discussed the matter 'quite thoroughly' with his counsel." (*Id.* at p. 565.)  We concluded that the waiver was knowing and intelligent, noting that "defendant acknowledged that he had thoroughly discussed the jury waiver with his attorney" and that "when the court asked whether he had any questions regarding the waiver, or wished to discuss it further with counsel, defendant answered in the negative." (*Id.* at p. 571.)  As in *Robertson*, we rejected a claim that the trial court's advisement was inadequate because it did not explain what would happen if the jury could not agree on the penalty.  (*Diaz*, at p. 570.)

In *Scott*, before the trial court accepted the defendant's jury trial waiver, "[t]he prosecutor explained what a jury trial was and that the jury would have to agree unanimously on guilt, special circumstances, and penalty.  He explained the charges, including the special circumstance allegations, and their significance, and that, if defendant waived a jury trial, the judge alone could find defendant guilty, find the special circumstances true, and impose the death penalty, with no need for anyone else to agree.  He also explained the nature of a penalty trial.  Defendant repeatedly said he understood." (*Scott*, *supra*, 15 Cal.4th at p. 1208.)  Further, the "defendant requested and was given an opportunity to consult with his attorney." (*Ibid.*)  "Defense counsel stated that he and defendant had discussed the matter, and both agreed that the waiver was in defendant's best interests 'in terms of trial tactics.'  Defendant personally stated he agreed.  When the court noted that defendant had hesitated slightly at one point, defendant reiterated his desire to waive a jury.  He said he had had enough time to talk to his attorney and felt comfortable with his decision." (*Ibid.*)  On this record, we said the trial court properly accepted the waiver.  (*Id.* at p. 1210.)

In *Collins*, the trial court observed that "defense counsel had spoken with defendant about giving up his right to a jury trial and having the trial take place

9

solely before a judge." (*Collins*, *supra*, 26 Cal.4th at p. 301.)  In addition, the trial court extensively advised the defendant on the nature of a jury trial, including the fact that "in order to return a verdict of guilty, all 12 jurors would have to agree to the verdict" (*id.* at p. 301) and the fact that "defendant would relinquish solely his right to trial by jury [by waiving] and would retain all his other rights" (*id.* at p. 302).  The trial court also "questioned defendant to determine whether defendant had sufficient knowledge of the right being waived, and obtained defendant's repeated affirmations that he understood the difference between trying his case to a jury and trying it to the court." (*Id.* at p. 311.)  We said the trial court gave "appropriate explanations and advisements concerning the right to jury trial" "in order to determine whether defendant's decision to waive that right was knowing and intelligent." (*Ibid.*)

In *Weaver*, the defendant "executed a two-page written waiver of his right to a jury trial" in which he affirmed "that defense counsel 'has fully explained' to defendant the terms 'jury trial' and 'court trial' and the 'difference between a "jury trial" and a "court trial." ' " (*Weaver*, *supra*, 53 Cal.4th at p. 1070.)  The trial court then "explained to defendant a number of differences between a court trial and a jury trial," including the jury unanimity requirement and the fact that a jury is composed of 12 members of the community.  (*Ibid.*)  The defendant confirmed that he understood those concepts and reiterated that defense counsel had explained to him the differences between a jury trial and a bench trial.  One of the defendant's attorneys then "stated that he, the other defense attorney, defendant, and defendant's father had discussed the matter together the day before for about two hours, and that the attorney believed waiving a jury was in defendant's best interest.  Defendant said he agreed with what his attorney had just said." (*Id.* at pp. 1070–1071.)  We concluded:  "The court was exceptionally careful in taking

10

defendant's jury waiver.  That waiver was knowing, intelligent, and voluntary in all respects." (*Id.* at p. 1076.)

In *Cunningham*, we noted that "[i]n response to questioning by the court, defendant indicated he understood (1) he had an absolute right to a jury trial in both the guilt and penalty phases of his trial, (2) in a jury trial, if one of the 12 jurors was not convinced beyond a reasonable doubt that defendant was guilty, the jury could not return a guilty verdict, (3) if he waived his right to a jury trial, instead of 12 people deciding the issue of his guilt or innocence, the judge alone would make that decision, and (4) it could be easier for the prosecution to convince only one person, as opposed to 12, that defendant was guilty beyond a reasonable doubt." (*Cunningham*, *supra*, 61 Cal.4th at p. 636.)  In addition, the defendant "confirm[ed] he had discussed the issue with his counsel, who concurred in the waiver." (*Ibid.*)  On this record, we held:  "The conclusion defendant's waiver of a guilt phase jury was knowing, intelligent, and voluntary is supported by his clear express waiver, made in open court, with counsel's consent and agreement, and after a full explanation from the court of the right and the consequences of the waiver." (*Id.* at p. 637.)

In the cases above, we did not purport to establish minimum requirements for a knowing and intelligent jury trial waiver, nor did we presume the validity of a waiver based on the fact that a defendant was represented by counsel.  Instead, we examined the totality of the circumstances in each case to decide whether the waiver was knowing and intelligent.  In every case beginning with *Miller*, we have relied on affirmative indications in the record — through questioning by the court (*Cunningham*, *supra*, 61 Cal.4th at p. 636; *Weaver*, *supra*, 53 Cal.4th at pp. 1070–1071; *Collins*, *supra*, 26 Cal.4th at p. 311; *Diaz*, *supra*, 3 Cal.4th at p. 571; *Robertson*, *supra*, 48 Cal.3d at p. 37, fn. 5; *Miller*, *supra*, 7 Cal.3d at pp. 566–567) or by the prosecutor (*Scott*, *supra*, 15 Cal.4th at p. 1208), or through

representations by defense counsel (*Deere*, *supra*, 41 Cal.3d at p. 359) — that the defendant understood the nature of the right he or she was waiving. Even in *Sivongxxay*, which involved a less-than-ideal waiver colloquy, we upheld the jury trial waiver after a searching review of the record for indications that it was knowing and intelligent. (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 167–168, 174, 189–190.) Like the other cases above, *Sivongxxay* did not rely on *Langdon*'s rule that a jury trial waiver made by a defendant with counsel is presumed to be knowing and intelligent.

Moreover, in addressing the significance of counsel, many of our cases have relied on affirmative indications in the record that counsel had discussed the jury trial right "fully," "thoroughly," or " 'at length' " with the defendant (*Weaver*, *supra*, 53 Cal.4th at p. 1071; *Diaz*, *supra*, 3 Cal.4th at p. 571; *Robertson*, *supra*, 48 Cal.3d at p. 36) or that the defendant "had had enough time to talk to his attorney" (*Scott*, *supra*, 15 Cal.4th at p. 1208) or had expressly "confirm[ed] he had discussed the issue with his counsel" (*Cunningham*, *supra*, 61 Cal.4th at p. 636). None of our cases in the past 50 years has relied on the mere fact of representation by counsel as the basis for presuming a valid waiver. If *Langdon*'s rule had been controlling this whole time, then much of the analysis that appears in our case law would have been unnecessary.

It is true that we have "eschewed any rigid formula or particular form of words that a trial court must use in taking a jury waiver." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169.) But in the case before us, the trial court did not inform Doyle of any differences between a jury trial and a bench trial, not even the fact that a jury trial involves 12 people deciding his guilt whereas a bench trial involves only one. Although defense counsel said she had an opportunity to speak with Doyle, the record does not indicate what was discussed or whether the discussion was adequate to enable Doyle to make a knowing and intelligent waiver decision. The

Court of Appeal observed that Doyle "waived his right to a jury trial without hesitation" and that he was informed of the similarities between a jury trial and a bench trial. (*Doyle*, *supra*, 5 Cal.App.5th at p. 447.) But those facts are not probative of whether Doyle understood the distinctive features of a jury trial. Without that understanding, it is unclear how he could have intelligently decided to waive a jury trial in favor of a bench trial.

The Court of Appeal ultimately relied on the fact that Doyle was represented by counsel and that nothing in the record shows he was misled or confused as to the nature of the right he purportedly waived. (*Doyle*, *supra*, 5 Cal.App.5th at p. 447.) By shifting the burden to Doyle to affirmatively show that his waiver decision *was not* knowing and intelligent, the Court of Appeal departed from our decades-long approach of asking whether the record affirmatively shows that the waiver decision *was* knowing and intelligent. The Court of Appeal relied on authority that we have not expressly disavowed. (See *Lookadoo*, *supra*, 66 Cal.2d at p. 311, citing *Langdon*, *supra*, 52 Cal.2d at p. 432.) But we have not relied on that authority in nearly five decades, despite ample opportunity to do so. Instead of dismissing review in this case, we should order briefing and decide the continuing vitality of the *Langdon* rule.

**II.**

The matter before us is the third case this year in which a thin colloquy has left us scouring the record for clues as to whether a defendant's jury trial waiver was knowing and intelligent. Although a waiver colloquy is not the only factor bearing on the constitutional validity of a jury trial waiver, our opinion in *Sivongxxay* "emphasize[d] the value of a robust oral colloquy in evincing a knowing, intelligent, and voluntary waiver of a jury trial." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169.) Specifically, we recommended that "trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but

13

not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Ibid.*)  Further, we advised that "the trial judge take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails.  A trial judge may do so in any number of ways — among them, by asking whether the defendant had an adequate opportunity to discuss the decision with his or her attorney, by asking whether counsel explained to the defendant the fundamental differences between a jury trial and a bench trial, or by asking the defendant directly if he or she understands or has any questions about the right being waived." (*Id.* at pp. 169–170.)  We said this guidance is "advisory" and "is not intended to limit trial courts to a narrow or rigid colloquy." (*Id.* at p. 170.)

The waiver colloquy in *Sivongxxay*, a capital case, mentioned that a jury is made up of 12 members of the community, that the defendant and his counsel would participate in jury selection, and that the judge alone would decide the question of guilt if a jury trial was waived.  (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 165–166.)  But the *Sivongxxay* colloquy did not mention that all 12 jurors must be unanimous in order to render a verdict, nor did the trial court inquire whether the defendant understood what a jury trial is, whether the defendant had discussed the decision with counsel, or whether the defendant had any questions about the jury trial right.  Based on the totality of circumstances, including the colloquy and the defendant's prior experience with the criminal justice system, the court concluded that his waiver of a jury trial as to the guilt phase was knowing and intelligent.  (*Id.* at p. 167.)  The court also found the waiver to be constitutionally adequate as to the special circumstance and penalty phases (*id.* at pp. 171–176,

14

188–190) over the dissents of two justices (*id.* at pp. 202–206, 212–214 (conc. & dis. opn. of Liu, J.); *id.* at pp. 216–224 (conc. & dis. opn. of Cuéllar, J.)).

In *Daniels*, another capital case, the trial court advised the defendant (who elected to waive counsel) that if he waived a jury trial, the court alone would decide the question of guilt, but the waiver colloquy did not mention any of the other advisements we recommended in *Sivongxxay*. (*Daniels*, *supra*, 3 Cal.5th at pp. 986–989 (lead opn. of Cuéllar, J.).) "The court never asked defendant whether he understood . . . the nature of the jury right he was waiving. The court itself supplied no information on the subject, nor did it confirm that defendant had received such information elsewhere — for example, from a written advisement (which defendant did not receive) or from counsel (which defendant, who was then self-represented, did not have)." (*Id.* at p. 1029 (conc. opn. of Kruger, J., conc. in the judgment).) Based on the totality of circumstances, including "indications in the record that defendant's overarching aim throughout the proceedings was simply to accept responsibility for the charged crimes" (*ibid.*), a four-to-three majority upheld the jury trial waiver as to the guilt phase, while a different four-to-three majority found the waiver constitutionally invalid as to the penalty phase. (See *id.* at pp. 1029–1030 (conc. opn. of Kruger, J.); *id.* at p. 1002 (lead opn. of Cuéllar, J.); *id.* at p. 1028 (conc. & dis. opn. of Corrigan, J.).)

In Doyle's case, the waiver colloquy is even more devoid of content than the one we narrowly upheld in *Daniels*. It did not include any of the four advisements we recommended in *Sivongxxay* nor any of the questions we urged trial courts to ask in order to assess whether a defendant's waiver decision has been " ' " 'made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.' " ' " (*Cunningham*, *supra*, 61 Cal.4th at p. 636.)

15

In *Sivongxxay*, we declined to hold, as a constitutional rule, that before accepting a jury trial waiver, a trial court must engage the defendant in a colloquy with specific advisements. (*Sivongxxay*, *supra*, 3 Cal.5th at p. 170.) However, as this case and others demonstrate, the absence of an informative colloquy often leaves reviewing courts with the conundrum of resolving the validity of a jury trial waiver on the basis of faint signals and debatable inferences from the record. An inquiry as fundamental as whether a criminal defendant has knowingly and intelligently waived a jury trial should not turn on such guesswork.

Other jurisdictions have eliminated the guesswork by taking a more prescriptive approach. The New Jersey Supreme Court, like our court, has not constitutionalized any requirements, but it has exercised its supervisory powers to require a jury waiver form as well as a colloquy, each of which must include the four advisements we recommended in *Sivongxxay*. (*State v. Blann* (N.J. 2014) 90 A.3d 1253, 1253.) The Wisconsin Supreme Court has held that a valid jury trial waiver requires a colloquy "designed to ensure that the defendant [among other things] was aware of the nature of a jury trial, such that it consists of a panel of 12 people that must agree on all elements of the crime charged" and "had enough time to discuss this decision with his or her attorney." (*State v. Anderson* (Wis. 2002) 638 N.W.2d 301, 310.) In Colorado, a state rule of criminal procedure provides that a court may not accept a jury trial waiver "without first determining [among other things] [¶] . . . [¶] [t]hat the defendant understands that: [¶] (i) The waiver would apply to all issues that might otherwise need to be determined by a jury including those issues requiring factual findings at sentencing; [¶] (ii) The jury would be composed of a certain number of people; [¶] (iii) A jury verdict must be unanimous; [¶] (iv) In a trial to the court, the judge alone would decide the verdict; [¶] (v) The choice to waive a jury trial is the defendant's alone and may be made contrary to counsel's advice." (Colo. Rules Crim. Proc., rule

16

23(a)(5)(II)(b).) In Vermont, a state rule of criminal procedure provides that "[t]he court shall not accept the defendant's waiver of the right to trial by jury without first, by addressing the defendant personally in open court, informing that person of, and determining that the person understands, the following: [¶] (1) That the jury consists of 12 members of the community, and that the defendant may participate in their selection; [¶] (2) That before the defendant can be convicted, all 12 members of the jury must agree on the defendant's guilt; [¶] (3) That where a jury is waived, the court alone decides guilt or innocence in accordance with the facts and the law." (Vt. Rules Crim. Proc., rule 23(a).)

Our precedent does not foreclose us, in a future case, from exercising "our supervisory power over California criminal procedure" to establish specific procedures to eliminate uncertainty as to whether a criminal defendant has knowingly and intelligently waived a jury trial. (*People v. Burgener* (2003) 29 Cal.4th 833, 861; see *People v. Engelman* (2002) 28 Cal.4th 436, 449.) In the meantime, given the importance and recurring nature of this issue, the alternative approaches cited above appear worthy of consideration by the Judicial Council pursuant to its rulemaking authority. (Cal. Rules of Court, rules 10.13, 10.20, 10.21, 10.22.)

The Legislature may also wish to consider whether it makes sense to require a written waiver or oral colloquy (or both) and, if so, what content such procedures must include to ensure that a criminal defendant fully understands the nature of a jury trial and the consequences of waiving it. (Cf. Pen. Code, §§ 977, subd. (b)(2) [prescribing language for written waiver of defendant's right to be personally present in criminal proceedings], 1192.5 [prescribing specific advisements that trial courts must give before accepting a guilty plea].) "For the average reader (or writer) of judicial opinions, it is perhaps elementary what a jury is and how it functions in a criminal trial. But we cannot assume such knowledge

17

among the general populace . . . ." (*Daniels*, *supra*, 3 Cal.5th at p. 1007 (conc. & dis. opn. of Liu, J.).)  Safeguarding the right to trial by jury — what Justice Scalia called "the spinal column of American democracy" (*Neder v. United States* (1999) 527 U.S. 1, 30) — is properly a task not only for the judiciary but also for the people's representatives.

**LIU, J.**