Filed 2/10/20

**CERTIFIED FOR PARTIAL PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SALVADOR YANEZ IV,<br><br>    Defendant and Appellant. | E070556<br>(Super.Ct.No. INF1500427)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The court has reviewed the petition for rehearing filed on February 20, 2020. The petition is denied. The opinion filed on January 21, 2020 is modified as follows:

I.  On page 21, first full paragraph, add the following after *People v. Tirado* (2019) 38 Cal.App.5th 637,

    review granted November 13, 2019, S257658.

This modification does not affect the judgment.

CERTIFIED FOR PARTIAL PUBLICATION

<u>FIELDS</u>
                                                                          J.

We concur:

<u>CODRINGTON</u>
            Acting P. J.
<u>RAPHAEL</u>
                    J.

1

Filed 1/21/20

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SALVADOR YANEZ IV,<br><br>    Defendant and Appellant. | E070556<br><br>(Super.Ct.No. INF1500427)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County. James S. Hawkins, Judge. Affirmed with directions.

Raymond Mark DiGuiseppe, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General; Julie L. Garland, Assistant Attorney General, and Daniel Rogers, Adrianne

---

    * Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II C., III A.-C., and III E.

Denault and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

On March 11, 2015, Gilbert Lopez died from gunshot wounds following a verbal argument with defendant and appellant, Salvador Yanez IV. Defendant was charged and convicted by a jury of the second degree murder of Lopez (Pen. Code, § 187, subd. (a))[1] and being a felon in possession of a firearm (§ 29800, subd. (a)(1)). The jury also found true special allegations that defendant discharged a firearm and caused great bodily injury or death in the commission of the murder. (§ 12022.53, subd. (d).) In a bifurcated proceeding, the trial court found defendant had suffered a prior conviction for a serious or violent felony pursuant to section 667, subdivision (a) and a prior strike conviction pursuant to section 667, subdivisions (b) through (i). Defendant was sentenced to a total of 60 years to life in state prison, representing 30 years to life for the murder conviction, an additional 25 years to life for the firearm enhancement, and an additional consecutive five years for the prior serious felony conviction.

On appeal, defendant contends: (1) the trial court abused its discretion in admitting expert gang testimony which should have been excluded as unduly prejudicial under Evidence Code section 352; (2) the prosecutor engaged in misconduct warranting reversal by referencing jury deliberations during argument on defendant's motion to

---

[1] Unless otherwise noted, all undesignated statutory references are to the Penal Code.

strike his firearm enhancement conviction; (3) defendant was not given constitutionally adequate advisement when waiving his right to a jury trial on his prior conviction and prior strike allegations; (4) the matter should be remanded to allow the trial court to exercise discretion to impose a lesser, uncharged firearm enhancement pursuant to section 12022.53, subdivision (h); and (5) the matter should be remanded to allow the trial court to exercise its discretion to strike a five-year enhancement pursuant to recent amendments made to sections 667 and 1385. We remand the matter for resentencing pursuant to amended sections 667 and 1385. In all other respects, we affirm the judgment.

## II. FACTS AND PROCEDURAL HISTORY

A. *Facts*

On March 11, 2015, Gilbert Lopez became involved in a verbal argument with defendant. Gilbert was visiting his brother, Angel Lopez, and the two were hanging out on the balcony of Angel's apartment when two men approached and called out to them from below.[2] Defendant was one of the two men.

Defendant looked up and initiated a verbal conversation with Angel by asking if Angel had seen an individual named "Stoner." When Angel responded that he had not seen "Stoner," defendant then asked Angel where he was from. Angel understood this to be a question regarding what gang he was in, and in response replied: "'I don't bang.'"

---

[2] Because they share the same surnames, we will refer to Gilbert Lopez and Angel Lopez by their first names for convenience and clarity, intending no disrespect.

3

However, Gilbert responded with: "'Wait a minute' . . . '[w]hy are you coming over here and saying where are you from?'"

In response to Gilbert, defendant identified himself as "Downer" from "JT." Gilbert proceeded to walk downstairs to confront defendant and a verbal argument ensued. Gilbert was heard saying: "'Why are you coming over here gangbanging to my brother?'" and "'Let's get down then.'" In response, defendant stated: "'Nah, not with all of these kids here.'" At some point, Gilbert pulled out a gun, to which defendant responded: "'What the fuck is wrong with you?'" Their verbal confrontation escalated to a point where others in the apartment complex called their children inside. Eventually, Gilbert returned to Angel's apartment and explained he had been arguing with defendant about gang-related activities like "not representing his hood."

While in Angel's apartment, Gilbert exchanged text messages with a friend. During this text exchange, Gilbert asked if his friend knew "Downer from J-T"; explained that he had been in a confrontation with Downer; stated that "I pulled out my strap 'cause I didn't know who it was"; and expressed concern stating "on the real homes if anything is—if anyone has beef to get at me on the street, Polfast." Shortly after his text exchange, Gilbert left Angel's apartment.

Angel watched from the balcony of his apartment as Gilbert walked towards the parking area of the apartment complex. Angel heard someone call out, "'[h]ey,'" watched as Gilbert turned in the direction of the voice, and watched Gilbert walk out of sight. Angel exited his apartment to follow Gilbert and heard several gunshots while

4

doing so. As Angel ran toward the sound of the shots, he observed defendant run away from the area, enter a white car, and drive away quickly. Angel saw a black object in defendant's hand as defendant was running toward the car, but could not specifically identify the object. He then discovered Gilbert shot and called an ambulance.

Gilbert had been shot five times, with gunshot wounds in his neck, torso, pelvis, right thigh, and left arm. The shots appeared to have been fired at close range and most of them indicated Gilbert had been shot from the backside. Gilbert died from these gunshot wounds.

B. *Charges*

On December 31, 2015, defendant was charged in an information with one count of murder (count 1; § 187, subd. (a)) and one count of unlawful possession of a firearm (count 2; § 29800, subd. (a)(1)). The information further alleged that defendant intentionally discharged a firearm causing great bodily injury or death in the commission of count 1 in violation of sections 12022.53, subdivision (d) and 1192.7, subdivision (c)(8). Finally, the information alleged that defendant had a serious felony prior (§ 667, subd. (a)), as well as a prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)).

## C. *Gang Evidence*

Because the only evidentiary issue raised on appeal relates to the testimony of the People's gang expert,[3] we summarize only those trial proceedings relevant to this issue.

### 1. Pretrial Motion on Gang Evidence

Prior to trial, the People requested that the court determine the admissibility of gang monikers pursuant to Evidence Code section 402. The trial court, prosecutor, and defense counsel reached an understanding following a discussion off the record. When placing this understanding on the record, the trial court stated: "Okay. We discussed [the People's] second [Evidence Code section] 402 regarding using gang monikers 'Downer' and 'Trece.' I don't know if there's others, but there was—we all agree there will be some testimony, basic testimony, about gangs and monikers can come in from both sides."

In response, defense counsel asserted the following objection: "I would initially make an Evidence Code [section] 352 argument that, you know, any mention of gang monikers or gang evidence could be more prejudicial than probative in this matter. However, to the extent that the Court agrees that gang-related evidence would be relevant to issues of the case, I would just argue what's good for the goose is good for the gander. If there's going to be mention of [defendant's] moniker and perhaps affiliation . . . then

---

[3] Defendant's opening brief challenges the introduction of "gang evidence" without specifically identifying the testimony or evidence subject to this challenge. However, the only evidence specifically referenced in his argument is testimony from the prosecution's gang expert. Accordingly, we consider defendant's challenge as one directed to the admission of this expert testimony.

those areas as to the victim . . . would be open as well, his moniker and his affiliation with what's been known to the Indio police officer an Indio gang."

2. Expert Gang Testimony

At trial, the People called a detective with the street crimes unit of the Indio Police Department as an expert to testify on Riverside County gangs. The detective opined that criminal street gangs are three or more people in an ongoing association or organization that share a name, common symbol or sign, and participate together in criminal activity. The detective explained that tattoos bore particular significance in the street gang culture because they signify that an individual has earned his place within the gang. He further explained that street gangs use monikers or nicknames to identify individuals within a gang, convey fear and intimidation, and to identify which individual committed a crime without using real names.

The detective testified that in gang terminology, the phrase "hit up" refers to a challenge which can be used to determine the identity of rival gang members or allies, or show dominance over another gang member, or as a prelude to violence. A "hit up" is alternatively referred to as "banging" or "gang-banging" and is typically initiated by asking someone where they are from. The typical responses to the question range from disclaiming any gang membership, identification of a gang affiliation, or immediate violence.

The detective personally knew defendant, knew defendant to be affiliated with the Jackson Terrace Street Gang, knew defendant bore tattoos associated with the Jackson

7

Terrace Street Gang, and knew defendant's moniker to be "Downer." During this questioning, defense counsel objected only to questions regarding defendant's tattoos based upon relevance. The detective was also familiar with Gilbert and knew him to be a member of the Sur Town Locos street gang. He was unaware of any rivalry between Sur Town Locos and Jackson Terrace Street Gang at the time of the shooting. Defense counsel did not object to any of the questioning related to Gilbert's gang affiliation.

Finally, the detective testified that in his experience, when crimes occur that are gang related, witnesses can be reluctant to assist. He further explained that gang members in custody who are known to have assisted police often face the prospect of being assaulted or killed.

On cross-examination, defense counsel elicited further testimony clarifying that both Sur Town Locos and Jackson Terrace Street Gang were active street gangs in Indio, that the gangs were separate gangs, and that no known rivalries existed between the two gangs. The detective identified defendant as a longtime gang member or "OG," and that gang-related crimes include homicide, theft, and the sale of drugs. The detective reconfirmed that the use of gang tattoos or verbal affiliation with a gang would be unacceptable absent membership in the gang. He was asked to confirm that a "hit up" was a challenge that could result in a verbal argument, physical confrontation, the use of weapons, a shooting, or a homicide. He also conceded that it is possible nothing violent occurs, depending on the reaction of the person being challenged.

On redirect examination, the detective explained that the concept of "respect" in the gang culture is paramount. He clarified that "OG" refers to an original gangster, someone who has grown up in the gang and put in work for the gang, earned his stripes or considered a veteran of the gang. He confirmed that defendant was considered an "OG" of his gang. No objections were made to this line of questioning.

D. *Verdict and Sentencing*

On March 1, 2018, a jury found defendant guilty of second degree murder on count 1. The jury also found true the allegation that defendant discharged a firearm causing great bodily harm or death in the commission of the murder. In a bifurcated proceeding, the trial court found true the special allegations that defendant had been previously convicted of a serious felony and strike offense.

Defendant requested that the court exercise its discretion to strike the firearm enhancement and prior strike conviction pursuant to sections 12022.53, subdivision (h) and 1385. The trial court denied both requests. Defendant was sentenced to 55 years to life on count 1, representing 15 years on the murder conviction, doubled to 30 years for the prior strike conviction and increased by an additional 25 years for the firearm enhancement. Defendant was also sentenced to an additional five years for the prior serious felony enhancement, to run consecutively with the sentence on count 1.[4]

---

[4] The trial court also sentenced defendant to four years on count 2, to run concurrently with the sentence on count 1.

9

### III.  DISCUSSION

A.  *Defendant Has Not Shown Error in Admission of Gang Expert Testimony*

Defendant contends the trial court erred in allowing the introduction of gang evidence, arguing that the evidence was more prejudicial than probative.  The argument was forfeited for failure to assert sufficiently specific objections below and we would find no error even if we were to consider the argument on the merits.

    1.  <u>Defendant Failed to Preserve the Challenge Below</u>

"[A] court may not reverse a judgment based on error in admitting evidence unless 'an objection to or a motion to exclude or to strike the evidence . . . was timely made and so stated as to make clear the specific ground of the objection or motion.'  '. . . [W]e have consistently held that the "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable.  [Citations.]'  [Citation.] 'Although no "particular form of objection" is required, the objection must "fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling."'" (*People v. Valdez* (2012) 55 Cal.4th 82, 130.)

"'The objection requirement is necessary in criminal cases because a "contrary rule would deprive the People of the opportunity to cure the defect at trial and would 'permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal.'"'" (*People v. Williams* (2008) 43 Cal.4th 584,

620.) Thus, a general objection to the admission of gang evidence prior to trial without identification of the specific evidence or testimony at issue is insufficient to preserve the objection on appeal. (*People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1208.)

Here, defendant did not file any pretrial motions seeking to exclude any gang-related evidence on the ground that it was more prejudicial than probative. Nor does the record disclose that defendant asserted this objection at any time during the testimony of the People's gang expert. In his opening brief, defendant directs us to a single instance in which an objection to gang-related evidence was asserted on the basis that it could be more prejudicial than probative. However, when viewed in context, this objection cannot be reasonably interpreted as sufficient to preserve the issue on appeal.

First, the objection was prompted by the trial court's statement that: "We discussed [the prosecution's] second [Evidence Code section] 402 regarding using gang monikers 'Downer' and 'Trece.' I don't know if there's others, but there was—we all agree there will be some testimony, basic testimony, about gangs and monikers can come in from both sides." Thus, the context indicates that the objection was made only to evidence referencing gang monikers and symbols. There was no discussion on the record and no indication by defendant that the objection was intended to extend to any and all evidence which might reference gangs or explain gang culture generally.

Second, even if the objection was intended to extend to all gang evidence generally, such an objection was not sufficiently specific. When the trial court expressed the opinion that "we all agree" at least some testimony about gangs would be admitted,

11

defendant did not object or attempt to correct that understanding. In response, defense counsel simply noted that unspecified gang evidence "could" be more prejudicial than probative, but did not identify any specific evidence, let alone explain the reason why any unspecified evidence would be prejudicial. In fact, defendant concedes on appeal that at least some gang evidence was properly admitted. Clearly, an objection is overbroad and not sufficiently specific where defendant himself concedes that it encompassed evidence and testimony which he did not intend to challenge. It was incumbent upon defendant to make specific objections to the specific testimony or evidence to allow the trial court to make an informed determination on the merits. Absent a specific objection, the challenge is deemed forfeited.

Finally, even if the objection had been properly raised, the record discloses that a significant amount of the testimony which defendant now argues was unduly prejudicial was, in fact, elicited by defense counsel on cross-examination. The testimony regarding the role of "hit ups" in the gang culture and defendant's status as a veteran or "OG" was elicited on cross-examination by defense counsel. Accordingly, "the testimony about which defendant now complains was elicited by his own counsel . . . [and] any error was invited, and defendant may not challenge that error on appeal." (*People v. Williams* (2009) 170 Cal.App.4th 587, 620.) For all of the above reasons, we conclude that any challenge to the admission of expert gang testimony was forfeited for failure to assert a proper objection below.

2. The Admission of Gang Expert Testimony Was Not Erroneous

Furthermore, even in the absence of forfeiture, we would conclude that the admission of expert gang testimony here was not erroneous.

(a) *General Legal Principles and Standard of Review*

"California courts have long recognized the potential prejudicial effect of gang evidence. . . . Because gang evidence creates a risk that the jury will infer that the defendant has a criminal disposition and is therefore guilty of the charged offense, 'trial courts should carefully scrutinize such evidence before admitting it.'  [Citation.]" (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167.)  "Nonetheless, evidence related to gang membership is not insulated from the general rule that all relevant evidence is admissible if it is relevant to a material issue in the case other than character, is not more prejudicial than probative, and is not cumulative." (*Ibid.*)  A trial court's decision to admit gang evidence is reviewed for abuse of discretion. (*People v. Carter* (2003) 30 Cal.4th 1166, 1194.)  "'The admission of gang evidence over an Evidence Code section 352 objection will not be disturbed on appeal unless the trial court's decision exceeds the bounds of reason. . . .'" (*People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1550.)

(b) *Analysis*

"Gang evidence is relevant and admissible when the very reason for the underlying crime, that is the motive, is gang related." (*People v. Samaniego*, *supra*, 172 Cal.App.4th at p. 1167.)  "Since at least 1980, our courts have recognized that evidence

of gang sociology and psychology is beyond common experience and thus a proper subject for expert testimony.  [Citations.]  [¶]  The People are entitled to 'introduce evidence of gang affiliation and activity where such evidence is relevant to an issue of motive or intent.'  [Citation.]  '[B]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence.'" (*People v. Gonzalez*, *supra*, 126 Cal.App.4th at p. 1550; see also *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1384 ["It is difficult to imagine a clearer need for expert explication than that presented by a subculture in which . . . mindless retaliation promotes 'respect.'"].)

This case arose out of a homicide which occurred following a rapidly escalating series of interactions involving defendant and Gilbert.  The interaction between these two apparent strangers was permeated by references to words and phrases which would be entirely unknown by those unfamiliar with gang culture.  Given such, the People introduced expert testimony which identified Gilbert and defendant as members of different gangs, explained the general relationship between their respective gangs, explained the meaning attributed to certain phrases in the gang subculture, and explained the importance and means of earning respect through confrontation within the gang subculture.  This testimony was clearly relevant to the issue of motive.  Such testimony could assist the jury in making sense of the facts, explained a potential reason why defendant's otherwise innocuous question to Angel would trigger such a seemingly disproportionate response from Gilbert, and explained why the verbal interaction could

14

create a potential for subsequent violence. To the extent defendant now argues that the expert's testimony was unconvincing, self-contradicting, or incomplete, these are issues of weight and credibility for the jury and do not impact its probative value with respect to the central issue of motive.

Given that the expert gang testimony here was directly relevant to the issue of motive, admission of this evidence was not an abuse of discretion unless its probative value was outweighed by the risk of prejudice. While the admission of any gang evidence comes with some degree of prejudice, the expert here did not offer any specific opinion on defendant's motives based on the facts of the case, did not discuss any specific prior criminal history of defendant, and did not discuss any prior criminal history involving the gang with which defendant was affiliated.

Furthermore, the trial court gave the jury a limiting instruction in the form of CALCRIM No. 1403, instructing the jury of the limited purpose for which they could consider any gang evidence. "Because the gang evidence was highly probative in this case, and the trial court gave a limiting instruction designed to lessen the risk of undue prejudice, we cannot say the trial court's decision to allow the gang affiliation evidence exceeded the bounds of reason." (*People v. Montes* (2014) 58 Cal.4th 809, 860.) Accordingly, even if defendant had preserved this challenge on appeal, we find no abuse of discretion in the trial court's decision to admit the gang evidence at issue. Since we find no error, we need not discuss defendant's arguments that he would have obtained a more favorable verdict in the absence of such evidence.

B. *Defendant Has Not Shown Prejudice Resulting from Alleged Prosecutorial Misconduct*

Defendant also argues that the prosecutor engaged in reversable misconduct by referencing information gathered about the jury's deliberative process during oral argument on defendant's motion to strike his firearm enhancement pursuant to section 12022.53, subdivision (h). Even assuming the prosecutor's reference was improper, we conclude that defendant has not shown resulting prejudice warranting reversal.

"'""A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' . . . [T]he misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'"'" (*People v. Tully* (2012) 54 Cal.4th 952, 1009.) "A prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'" (*Id.* at pp. 1009-1010.) Furthermore, "'[a] defendant's conviction will not be reversed for prosecutorial misconduct, however, unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct. . . .'" (*Id.* at p. 1010.)

Here, the single statement by the prosecutor that 11 members of the jury believed the crime was first degree murder, which defendant now contends constituted misconduct, was a reference made during oral argument on a motion before the trial

16

judge outside the presence of the jury. "'"A trial judge hears many items during the course of a trial which are inadmissible . . . . The fact that [s]he has heard these things does not mean that [s]he cannot divorce them from [her] mind."'" (*Hayward v. Superior Court* (2016) 2 Cal.App.5th 10, 60, citing *People v. Beaumaster* (1971) 17 Cal.App.3d 996, 1009.) "'"As an aspect of the presumption that judicial duty is properly performed [citation], we presume . . . that the court . . . is able to distinguish admissible from inadmissible evidence, relevant from irrelevant facts, and to recognize those facts which properly may be considered in the judicial decisionmaking process." [Citation.] Stated another way, a trial court is presumed to ignore material it knows is incompetent, irrelevant, or inadmissible.' [Citation.] 'Only proof that the evidence actually figured in the court's decision will overcome these presumptions. . . .'" (*Hayward v. Superior Court*, *supra*, at pp. 60-61; see also *People v. Crittenden* (1994) 9 Cal.4th 83, 151 [even where trial court reviewed improper evidence, "we assume the court was not improperly influenced thereby, absent evidence in the record to the contrary."].)

There is nothing in this record which demonstrates that the trial court relied on the prosecutor's reference to the jury's initial vote regarding first degree murder in exercising its discretion whether to strike the firearm enhancement. The prosecutor argued and the trial court heard many appropriate factors to consider in the exercise of its discretion, including, but not limited to, defendant's violent criminal past and the egregious circumstances of the crime. Thus, regardless of whether the reference to jury deliberation was proper, we presume the trial court properly performed its judicial duty and

17

disregarded any such argument in ruling on the motion to strike defendant's firearm enhancement. Absent any indication that the trial court relied upon improper argument as a basis for its ruling, defendant has not shown prejudice warranting reversal.

C. *Defendant Knowingly Waived the Right to a Jury Trial on the Prior Conviction Allegations*

Defendant also argues the trial court failed to properly obtain a waiver of his right to a jury trial on the prior conviction enhancement allegations, requiring reversal on that issue. There is no question that defendant expressly stated on the record that he gave up his right to a jury trial on the prior conviction enhancements. However, defendant argues that the record does not affirmatively disclose proper admonishment or advisement by the trial court when putting his waiver on the record. Thus, the issue before us is not whether the waiver was voluntary, but rather whether the waiver was knowing and intelligent. While the process used here to confirm defendant's waiver on the record was not ideal, we find no error given the totality of the circumstances.

"Under the federal Constitution and our state Constitution, a defendant in a criminal prosecution has a right to a jury trial. [Citations.] However, a 'jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel.' [Citation.] Waiver must be 'expressed in words . . . and will not be implied from a defendant's conduct.' [Citation.] . . . '[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.'" (*People v. Sivongxxay*

18

(2017) 3 Cal.5th 151, 166.)  Given the importance of ensuring a voluntary, knowing, and intelligent waiver, our Supreme Court has strongly suggested that trial courts use a "robust oral colloquy" which specifically advises a defendant "of the basic mechanics of a jury trial." (*Id.* at p. 169.)

Nevertheless, our Supreme Court has continued to affirm that no specific colloquy or admonishments are required, explaining:  "'[T]he United States Supreme Court has never held that a defendant, when waiving the right to a jury, constitutionally is entitled to be canvassed by the trial court, let alone to require a specifically formulated canvass' [citations] and we have never insisted that a jury waiver colloquy invariably must discuss juror impartiality, the unanimity requirement, or both for an ensuing waiver to be knowing and intelligent." (*People v. Sivongxxay*, *supra*, 3 Cal.5th at p. 168.)  We have similarly expressed the same view that "there is no requirement that the trial court explain to a defendant every aspect that he is giving up in entering a waiver to a jury trial." (*People v. Doyle* (2016) 19 Cal.App.5th 946, 952-953.)  Instead, we look to the totality of the circumstances unique to each case in order to determine whether a waiver was knowing and intelligent. (*People v. Sivongxxay, supra*, at pp. 166-167.)

We initially note that defendant expressly waived his right to a jury trial on the record.  Despite the fact that the waiver placed on the record did not itself include any specific mention of the mechanics of a jury trial, we cannot ignore the fact that the waiver was taken almost immediately following the conclusion of defendant's jury trial on the underlying offense.  Defendant was present and personally witnessed every aspect of his

19

jury trial. Thus, defendant personally witnessed the fact that a jury is made up of 12 members of the community, personally observed his counsel's ability to participate in jury selection, personally heard the court instruct the jury that its duty was to impartially determine the facts, and personally heard the court advise the jury that any verdict required unanimity. The waiver at issue here was taken shortly after the jury retired to deliberate and the trial court did advise defendant that by waiving his right to a jury, defendant was electing to have the truth of his prior conviction allegations determined by a judge.

Given the unique timing of the waiver in the context of this case, it would be unreasonable to conclude that defendant was unaware of the basic mechanics of a jury trial at the time his waiver was otherwise voluntarily given. Defendant has not shown that his waiver in this case was unknowing or unintelligent given the timing and circumstances presented in this case.

D. *Remand of the Firearm Enhancement Sentence Is Not Warranted*

Defendant requested that the trial court exercise its discretion to strike his firearm enhancement pursuant to section 12022.53, subdivision (h) and the request was denied. Nevertheless, defendant contends that the matter must be remanded to allow the trial court to exercise its discretion to potentially impose a lesser, uncharged firearm enhancement under section 12022.53, subdivision (h), relying on *People v. Morrison* (2019) 34 Cal.App.5th 217 as authority for such "newly-granted discretion." We respectfully disagree with the reasoning set forth in that opinion and conclude that the

20

statute does not afford any such discretion. We therefore decline to remand the matter on this basis.

Section 12022.53 provides three different sentence enhancements for the personal use of a firearm in the commission of enumerated offenses: a 10-year enhancement for the personal use of a firearm (§ 12022.53, subd. (b)); a 20-year enhancement for the personal and intentional discharge of a firearm (§ 12022.53, subd. (c)); and a 25-year-to-life enhancement for the personal and intentional discharge of a firearm causing great bodily injury or death (§ 12022.53, subd. (d)). Recently, the Legislature amended the statute to include the following: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. . . ." (§ 12022.53, subd. (h).)

Thus, the question we consider here is whether the statute, as amended, provides authority for a trial court to exercise discretion to impose a lesser included, uncharged enhancement in the interests of justice pursuant to section 1385, notwithstanding a finding by the trier of fact in support of a greater enhancement. In *Morrison*, our colleagues in the First District concluded that it does, analogizing to cases recognizing the trial court's discretionary authority to impose a lesser included, uncharged enhancement where a greater enhancement found true by the trier of fact is determined either legally inapplicable or unsupported by sufficient evidence. (*People v. Morrison*, *supra*, 34 Cal.App.5th at pp. 222-223.) More recently, our colleagues in the Fifth District reached the opposite conclusion in *People v. Tirado* (2019) 38 Cal.App.5th 637,

21

concluding that the statute contained no language suggesting the Legislature intended to grant such discretion in sentencing.  (*Id.* at pp. 642-644.)  After conducting our own independent analysis of section 12022.53, subdivision (h), we agree with the conclusion reached in *Tirado*.

"""When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.'"""  (*Hassell v. Bird* (2018) 5 Cal.5th 522, 540.)  In construing any statute, "we may not broaden or narrow the scope of the provision by reading into it language that does not appear in it or reading out of it language that does.  'Our office . . . "is simply to ascertain and declare" what is in the relevant statutes, "not to insert what has been omitted, or to omit what has been inserted."'  [Citation.]  ""A court . . . may not rewrite the statute to conform to an assumed intention which does not appear from its language."""  (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545.)

Here, nothing in the plain language of sections 1385 or 12022.53, subdivision (h) suggests an intent to allow a trial court discretion to substitute one sentencing enhancement for another.  We agree with our colleagues in the Fifth District that under a

plain reading, the Legislature's use of the words "strike" or "dismiss" indicates the court's power pursuant to these sections is binary. (*People v. Tirado*, *supra*, 38 Cal.App.5th at p. 643.) We note that our colleagues in Division Three of this district reached the same conclusion when considering the plain meaning of the term "strike" in the context of a similar drug sentencing enhancement statute in *People v. Harvey* (1991) 233 Cal.App.3d 1206. There, the court analyzed Health and Safety Code section 11370.4, subdivision (e), which provides the trial court may "strike" an enhancement if it determines that there are circumstances in mitigation. (*People v. Harvey*, *supra*, at p. 1229.) In concluding that the word "strike" did not include discretion to impose a lesser enhancement, the court explained: "The wording of the section makes it clear that the sentencing court has only two alternatives. If the court does not feel there are mitigating circumstances sufficient to justify the striking of the enhancement, it must impose the enhancement. Otherwise, if it finds that mitigating circumstances do exist which would justify striking the enhancement, it may be stricken. Nowhere does the section indicate the court may impose only a portion of the enhancement. In interpreting the statute, the Legislature is presumed to have meant what it said, and the plain meaning of the language governs. [Citation.] Nowhere in the statute does it indicate the court has any discretion besides either imposing the full enhancement or striking it in its entirety." (*Id.* at pp. 1229-1230.) The same reasoning would apply here.

Further, even if the wording of section 12022.53, subdivision (h) were ambiguous, "we apply 'reason, practicality, and common sense to the language at hand' [citation]

. . . consider[ing] the consequences that will flow from a particular interpretation" in order to reach a proper interpretation of the statute. (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1084.) Here, we must consider the impact any proposed interpretation of section 12022.53, subdivision (h) may have on the separation of powers. "'The California Constitution (art. III, § 3) provides that "the powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by [the] Constitution." [¶] It is well settled that the prosecuting authorities, exercising executive functions, ordinarily have the sole discretion to determine whom to charge with public offenses and what charges to bring. [Citations.] . . . The prosecution's authority in this regard is founded, among other things, on the principle of separation of powers, and generally is not subject to supervision by the judicial branch.'" (*People v. Andreotti* (2001) 91 Cal.App.4th 1263, 1268, citing *People v. Birks* (1998) 19 Cal.4th 108, 134.) In light of such, we decline to adopt an interpretation of section 12022.53, subdivision (h) which would vest the trial court with discretionary power to essentially modify a charge brought by the prosecutor despite sufficient evidence to support such a charge.

Here, the People charged defendant with a sentencing enhancement pursuant to section 12022.53, subdivision (d) and the jury found those allegations true. There is no suggestion that the jury's verdict was unsupported by the law or the evidence as would

24

justify the imposition of a lesser offense[5]. Because we reach a conclusion contrary to that in *Morrison*, we decline to remand the matter for resentencing on the ground that the trial court has newly granted discretion to impose a lesser, uncharged enhancement.

Finally, we note that even if we were to adopt a different interpretation and find section 12022.53, subdivision (h) vests the trial court with discretion to modify a charge otherwise supported by sufficient evidence, we would find that defendant forfeited the argument in this case. "A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial." (*People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100.) The amended statute became effective January 1, 2018 and defendant was not sentenced until May of 2018. While the defendant requested the trial court strike the enhancement pursuant to the amended statute, there was no request to modify or reduce the enhancement. Accordingly, even if we were to hold that the amended statute gave the trial court discretion to impose a lesser enhancement, any such argument was forfeited by failing to raise the issue below.

E. *Remand to Exercise Discretion to Strike the Prior Conviction Enhancement*

Finally, defendant contends that his sentencing should be remanded to permit the trial court to exercise its discretion to strike a five-year enhancement pursuant to recent

---

[5] To the extent the Legislature has provided statutory authority for a trial court to modify a verdict in order to impose a lesser offense or lesser punishment than that found true by a jury, it has specified that such should occur only when the verdict is contrary to the law or evidence. (§ 1181.)

25

amendments made to sections 667 and 1385.  The People concede that the amendments to sections 667, subdivision (a) and 1385, subdivision (b) embodied in Senate Bill No. 1393 (2017-2018 Reg. Sess.) which permit a trial court to exercise discretion to dismiss or strike a five-year consecutive term imposed for prior serious felony convictions applies here because his conviction is not yet final.  (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971.)  Nevertheless, the People argue that remand is not necessary because the record is clear the trial court would not have exercised its discretion to strike the prior serious felony conviction even if it had been given the opportunity to do so.  We disagree.

"We are not required to remand to allow the court to exercise its discretion if 'the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken [the] . . . enhancement' even if it had the discretion."  (*People v. Jones* (2019) 32 Cal.App.5th 267, 272-273.)  "The trial court need not have specifically stated at sentencing it would not strike the enhancement if it had the discretion to do so.  Rather, we review the trial court's statements and sentencing decision to infer what its intent would have been."  (*Id.* at p. 273.)

However, we are not convinced that the record here allows us to draw that inference.  The trial court's denial of defendant's motion to strike his prior strike conviction and denial of defendant's motion to strike his firearm enhancement certainly allows us to infer that the trial court intended to impose a significant sentence.  However, when sentencing on the unlawful possession conviction, the trial court imposed only the middle term and further allowed the sentence to run concurrently with the sentence on the

26

murder conviction, indicating some desire for leniency. Accordingly, the record does not clearly indicate that the trial court would not have exercised its discretion to strike the serious prior felony conviction if it had been given the opportunity to do so. We remand the matter to allow the trial court an opportunity to exercise its discretion to do so, without expressing any opinion as to how such discretion should be exercised.

## IV. DISPOSITION

The conviction is affirmed. The matter is remanded to permit the trial court to determine whether to strike the enhancement under section 667, subdivision (a) and to resentence defendant accordinatly. In all other respects the judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

FIELDS
J.

We concur:

CODRINGTON
Acting P. J.

RAPHAEL
J.

27