Filed 5/25/22  P. v. Peterson S. CA2/6
(see dissenting opinion)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PETERSON S.,<br><br>    Defendant and Appellant. | 2d Crim. No. B313492<br>(Super. Ct. No. 21PT-00309)<br>(San Luis Obispo County) |

Peterson S. appeals from an order recommitting him for treatment to the Department of State Hospitals as a mentally disordered offender (MDO).  (Pen. Code, § 2962 et seq.)[1]  He was diagnosed with schizophrenia.  His commitment offense was felony assault with a deadly weapon or instrument other than a firearm.  (§ 245, subd. (a)(1).)

Appellant's sole contention is that his waiver of a jury trial was invalid because the trial court failed to properly advise him

---

[1] All statutory references are to the Penal Code.

of his right to a jury trial. Considering the totality of the circumstances, we conclude that appellant knowingly and intelligently waived his right to a jury trial. Accordingly, we affirm.

*Proceedings in Trial Court*

The trial court's jury trial advisement and appellant's waiver were as follows:

"THE COURT: [Counsel], have you had an opportunity to speak with [appellant]?

"[Counsel]: I have, Your Honor.

"THE COURT: How would he like to have the matter set?

"[Counsel]: I've gone over my client's rights in this regard, he would ask that this matter be set for a court trial . . . .

"THE COURT: All right. . . . I know you [appellant] have discussed this with your attorney. I want to make sure that you know that on this petition you have the right to a jury trial where 12 people from the community . . . come in, they would hear the evidence. The District Attorney's office would have to present evidence and prove beyond a reasonable doubt each of the elements of the petition. But as you've discussed with your attorney, you also can elect and choose to waive your right to a jury and have a [c]ourt hear the matter. That would be a judge trial. And your attorney has indicated that you want to waive your right to a jury and have a judge hear your trial. Is that correct, sir?

"[Appellant]: Yeah.

"THE COURT: All right. Then we will find a waiver of jury and we will set the matter for a court trial." He maintains that the advisement was inadequate because "[t]he court did not (i) explain to appellant that through counsel he may participate

2

in jury selection, (ii) explain that all jury members must unanimously agree upon a verdict, (iii) explain that if appellant waived the right to a jury trial the judge alone would decide the issues, (iv) ask if appellant had consulted with his attorney, (v) ask appellant whether counsel had explained the differences between a jury and a bench trial, and (vi) ask whether appellant understood the right he was waiving."

Appellant argues, "While the record does include counsel's statement that he discussed the issue of a jury trial with appellant, the record does not affirmatively show (because the court failed to inquire) that they discussed the 'basic mechanics' of a jury trial, or the 'fundamental differences' between a court trial and a jury trial before [appellant] made his jury waiver. [Citations.] The court also did not ask appellant if he felt that the conversation was sufficient and whether he understood counsel's advice. Thus, no inference can be drawn from counsel's representation to the court."

*The Sivongxxay Guidelines*

Appellant's claim of an inadequate jury trial advisement is based on *People v. Sivongxxay*, (2017) 3 Cal.5th 151 (*Sivongxxay*). There, our Supreme Court "offer[ed] some general guidance to help ensure that a defendant's jury trial waiver is knowing and intelligent, and to facilitate the resolution of a challenge to a jury waiver on appeal." (*Id*. at p. 169.) The court "recommend[ed] that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives

3

the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Ibid*.) The Supreme Court "also recommend[ed] that the trial judge take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails. A trial judge may do so in any number of ways—among them, by asking whether the defendant had an adequate opportunity to discuss the decision with his or her attorney, by asking whether counsel explained to the defendant the fundamental differences between a jury trial and a bench trial, or by asking the defendant directly if he or she understands or has any questions about the right being waived." (*Id*. at pp. 169-170.)

*The Sivongxxay Guidelines Are Not Mandatory*

A trial court's failure to follow the *Sivongxxay* guidelines does not necessarily result in the absence of a knowing and intelligent waiver of a defendant's jury trial right. The Supreme Court stated: "[W]e emphasize that our guidance is not intended to limit trial courts to a narrow or rigid colloquy." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 170.) "Our precedent has not mandated any specific method for determining whether a defendant has made a knowing and intelligent waiver of a jury trial in favor of a bench trial. We instead examine the totality of the circumstances." (*Id*. at p. 167.) "[A] trial court's adaptation of or departure from the recommended colloquy in an individual case will not necessarily render an ensuing jury waiver invalid. . . . Reviewing courts must continue to consider all relevant circumstances in determining whether a jury trial waiver was knowing, intelligent, and voluntary." (*Id*. at p. 170.) "[U]ltimately, a "'defendant's rights are not protected only by adhering to a predetermined ritualistic form of making the

4

record.  Matters of reality, and not mere ritual, should be controlling.""" (*Ibid*.)

In *Sivongxxay* the defendant was "a Laotian refugee with no formal education and limited command of the English language . . . ." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 166.)  "[H]e was represented by counsel and assisted by a translator throughout the trial." (*Id*. at p. 167.)  After a court trial, he was convicted of first degree murder.  The trial court found true a special circumstance allegation and imposed the death penalty.  The Supreme Court upheld the validity of the defendant's jury waiver even though "the trial court's waiver colloquy did not explain that a jury must be impartial, that its verdict must be unanimous, or that the trial court must declare a mistrial if the jury fails to reach a verdict.  The trial court also did not ask any questions confirming that defendant understood how a jury works, or that defendant had discussed the jury waiver with his counsel." (*Id*. at pp. 166-167.)  "[T]he trial court advised defendant that he had a right to a jury trial, that a jury consists of 12 people from the community, that he would have the right to participate in the selection of the jury, and that waiver of the right to a jury would mean the judge alone would determine his guilt or innocence and any resulting punishment.  After these advisements, defendant answered 'Yes' when asked whether he wished to 'give up [his] right to a jury trial and agree that this Court, alone, will make those decisions.'"[2] (*Id*. at p. 167.)  Despite

---

[2] The verbatim advisement and waiver were as follows:

"'THE COURT: Mr. Mounsaveng, Mr. Sivongxxay, you each have a right to a trial, either by a jury of 12 people selected from this community, through a process that you would engage in with your attorneys, the district attorney and the Court, or a trial in

the noncompliance with the *Sivongxxay* guidelines, the Supreme Court concluded, "Viewed holistically, the circumstances surrounding defendant's jury waiver demonstrate that it was knowing and intelligent." (*Id.* at p. 168.)

*Appellant Knowingly and Intelligently*
*Waived His Right to a Jury Trial*

Considering the totality of the circumstances, we conclude appellant knowingly and intelligently waived his right to a jury trial. "The defense initiated the request for a court trial." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 167.) Counsel said, "I've gone over my client's rights in this regard, he would ask that this matter be set for a court trial . . . ." It is reasonable to interpret counsel's statement as meaning, "I've discussed with my client his constitutional right to a jury trial, and he has decided to

---

front of a judge, acting alone without a jury. [¶] The burden of proof remains the same. The district attorney has the burden to go forth with evidence sufficient to prove your guilt beyond a reasonable doubt. Then, and only then, would we get to a penalty phase. [¶] In a court trial, I would hear the evidence. I, alone, would make the decision on whether that evidence was sufficient to prove your guilt beyond a reasonable doubt. [¶] In the event I made such a finding, as to either or both of you, we would then proceed to a penalty phase, where the district attorney would present aggravation evidence. Through your—you, through your attorney, would have a right to present mitigation evidence, and it would fall upon me to make the decision as to the appropriate punishment, which could result in a death penalty sentence. [¶] Do you give up your right to a jury trial and agree that this Court, alone, will make those decisions, Mr. Mounsaveng?

"'THE DEFENDANT MOUNSAVENG: Yes.

"'THE COURT: Mr. Sivongxxay?

"'THE DEFENDANT SIVONGXXAY: Yes.'" (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 165-166.)

6

waive jury and have the matter tried by the court." The trial court so interpreted counsel's statement. The court informed appellant that he had a "right to a jury trial where 12 people from the community . . . would hear the evidence. . . . But as you've discussed with your attorney, you also can elect and choose to waive your right to a jury and have a Court hear the matter. That would be a judge trial." The court asked, "[Y]our attorney has indicated that you want to waive your right to a jury and have a judge hear your trial. Is that correct, sir?" Appellant answered in the affirmative. "The record reveals no hesitation by [appellant] in entering the waiver, nor uncertainty or confusion about its scope or consequences . . . ." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 188.)

We reject appellant's claim that, "[a]s literally understood, the court was asking appellant to confirm his counsel's statement [that appellant wanted to waive his right to a jury trial], not [asking him] to personally waive [jury] trial . . . ." Any reasonable person in appellant's position would have understood that he was personally waiving his right to a jury trial. The trial court was not, as appellant maintains, "'merely a passive receiver of an attempted waiver.'"

In contrast to the waiver here, in *Sivongxxay* there was no evidence "that defendant had discussed the jury waiver with his counsel." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 167.) It is arguable that, in view of counsel's representation that he had discussed the jury waiver with appellant, evidence of an intelligent and knowing waiver is stronger here than in *Sivongxxay*.

Counsel's presence and participation in the jury waiver is of crucial importance. "Counsel is presumed competent and informed as to applicable constitutional and statutory law. . . .

7

Counsel . . . can be expected, where necessary or advisable, to consult with the client about jury trial concerns. [Citation.]" (*People v. Barrett* (2012) 54 Cal.4th 1081, 1105; see also *Conservatorship of John L.* (2010) 48 Cal.4th 131, 151 ["Like all lawyers, the court-appointed attorney is obligated to keep her client fully informed about the proceedings at hand, [and] to advise the client of his rights"]; *People v. Daniels* (2017) 3 Cal.5th 961, 996 (*Daniels*) (lead opn. of Cuéllar, J.) ["Counsel plays a crucial part in transmitting information to the client [about waiver of the right to a jury trial]. Time and time again, our precedent has recognized as much, incorporating within the totality of relevant circumstances not only the fact of representation by counsel, but also record references to discussions between counsel and defendant"]; *Id.* at p. 999 ["Courts generally rely on counsel to transmit to defendants critical information about whether to waive the jury trial right and the consequences of waiving it"]; *People v. Diaz* (1992) 3 Cal.4th 495, 571 [jury waiver valid because, among other factors, "defendant acknowledged that he had thoroughly discussed the jury waiver with his attorney"].)

"Although the presence of counsel does not by itself mean 'that the defendant's interests and rights are protected . . . the fact of counsel being present and having advised the defendant is a factor to be considered in determining the question of the need for or sufficiency of any admonition given by the court. [Citations.]' . . . Indeed, it would be to blink at the reality disclosed by this record to conclude other than that [appellant's] decision to have his fate determined by [the trial court], rather than by a jury, was a tactical decision entered into by [appellant] after consultation with and advice from experienced and capable

8

defense counsel."[3]  (*State v. Cobb* (1999) 251 Conn. 285, 373; see also *People v. Doyle* (2016) 19 Cal.App.5th 946, 953 [waiver of jury trial valid because "defendant's counsel advised the trial court she had discussed defendant's waiver of a jury trial with him on two occasions" and "[t]here is nothing in the record to support that defendant was confused as to the right to a jury trial or that he did not knowingly waive that right"]; *People v. Acosta* (1971) 18 Cal.App.3d 895, 902 ["We are not aware of any rule of law that entitles a defendant who is represented by counsel and who has discussed waiver of a jury trial with his counsel, as here, to have the court advise him of the merits or the disadvantages of a trial by jury, as against a court trial"].)

*Appellant's Schizophrenia*

Appellant asserts that, in determining whether he made a knowing and intelligent waiver of his right to a jury trial, we should take into account his "history of mental illness."  But this factor does not detract from our conclusion that appellant's jury waiver was knowing and intelligent.  "A schizophrenic condition does not render a defendant incapable of effectively waiving his rights." (*People v. Watson* (1977) 75 Cal.App.3d 384, 396-397 [despite evidence that defendant "had an I.Q. of 65 [and] exhibited signs of chronic organic brain damage and schizophrenia," the "'totality of circumstances'" supported finding that he had made a knowing and intelligent waiver of his rights].)  The California Supreme Court found that a 13-year-old minor had knowingly and intelligently waived his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436) despite his "young age

---

[3] We take judicial notice that trial counsel was admitted to the State Bar of California in 2010.

9

and low intelligence" and his diagnosis as a "paranoid schizophrenic." (*People v. Lewis* (2001) 26 Cal.4th 334, 384.)

No expert testimony was presented on whether appellant's mental illness impaired his ability to knowingly and intelligently waive his right to a jury trial. In the absence of such expert testimony, we cannot infer that his ability was impaired. "[A]n inference [cannot] be based on mere possibility or flow from suspicion, imagination, speculation, supposition, surmise, conjecture or guesswork." (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581.) "It must logically flow from other facts established in the action." (*People v. Austin* (1994) 23 Cal.App.4th 1596, 1604, disapproved on another ground in *People v. Palmer* (2001) 24 Cal.4th 856, 861, 867.)

*People v. Blancett Is Distinguishable*

In *People v. Blancett* (2017) 15 Cal.App.5th 1200 (*Blancett*), we considered whether a prisoner had validly waived his right to a jury trial in an MDO proceeding. We noted that in *Sivongxxay*, *supra*, 3 Cal.5th at p. 169, our Supreme Court had "emphasized 'the value of a robust oral colloquy' in eliciting a knowing, intelligent, and voluntary waiver of a jury trial." (*Blancett*, *supra*, at p. 1205.) In *Blancett* the colloquy between the MDO defendant and the trial court was as follows:

"'[Counsel]: Yes. We'd like to set it for court trial.

"'The Court: All right. So, Mr. B., [counsel] says that you are okay with having a judge decide your case and not a jury?

"'[Blancett]: Yes, your honor.

"'The Court: That's okay with you?

"'[Blancett]: Yes, your honor.

"'The Court: All right.'" (*Blancett*, *supra*, at p. 1203.)

10

We concluded that the MDO defendant in *Blancett* "did not waive his right to a jury trial with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it." (*Blancett, supra,* 15 Cal.App.5th at p. 1206.) We explained: "The trial court did not inform Blancett that he had a right to a jury trial, nor did the court explain the significant attributes or mechanics of a jury trial. [Citation.] Neither did the court inquire whether Blancett had sufficient opportunity to discuss the decision with his attorney, whether his attorney explained the differences between a bench trial and a jury trial, or whether Blancett had any questions about the waiver. [Citation.] In a barebones colloquy, the court asked only if Blancett was 'okay' with a court trial instead of a jury trial. [Citation.] . . . Indeed, the court appointed counsel moments before Blancett entered his waiver and there is no record of discussion between Blancett and his attorney prior to the waiver. [¶] Moreover, this was Blancett's initial MDO commitment and the record does not suggest that Blancett was familiar with MDO proceedings or that he was aware that he was entitled to a jury trial." (*Ibid.*) "In view of the trial court's stark colloquy, the lack of evidence that Blancett discussed his jury trial right and waiver with counsel, Blancett's inexperience with the criminal justice system, and Blancett's lack of familiarity with MDO proceedings, we conclude that his waiver was not knowing and intelligent." (*Id.* at pp. 1206-1207.)

The present case is distinguishable from *Blancett*. Unlike the trial court in *Blancett*, here the trial court expressly advised appellant of his right to a jury trial. Appellant expressly waived that right. In addition, appellant concedes that "the record does include counsel's statement that he discussed the issue of a jury

11

trial with appellant." (See *People v. Blackburn* (2015) 61 Cal.4th 1113, 1124 ["counsel is presumed to know the defendant's rights and is obligated to advise the defendant accordingly"].) Finally, it is reasonable to infer that, unlike Blancett, appellant was familiar with MDO proceedings. Appellant was being *recommitted* as an MDO.[4] Blancett, in contrast, was being *initially* committed.

*People v. Jones Is Also Distinguishable*

In *People v. Jones* (2018) 26 Cal.App.5th 420 (*Jones*), the defendant appealed after her conviction of second degree murder following a court trial. The waiver of her right to a jury trial was as follows:

"'[Prosecutor]: Ms. Jones, your attorney[] ha[s] indicated that you wish to waive jury and have this case decided by Judge Sahagun sitting alone. In order to do that, you . . . have to waive your right to a jury trial. Ms. Jones, do you understand your right to a jury trial?

"'Defendant Jones: Yes, sir.

"'[Prosecutor]: Do you agree to waive that right and have Judge Sahagun, sitting alone, decide the case?

---

[4] Appellant acknowledges, "This was a recommitment hearing . . . ." "[A]n MDO is committed for a one-year period and thereafter has the right to be released unless the People prove beyond a reasonable doubt that he or she should be recommitted for another year." (*People v. McKee* (2010) 47 Cal.4th 1172, 1202.) The record does not indicate whether, in the previous MDO commitment proceedings, appellant invoked his right to a court or jury trial. (§ 2966, subd. (b).)

12

"'Defendant Jones:  Yes, sir.'" (*Jones, supra,* at p. 428.)

The appellate court concluded that Jones's "waiver of her right to a jury trial was not knowing, intelligent, and voluntary" because "[t]he trial court's two-question inquiry of Jones, as to whether she 'underst[ood] [her] right to a jury trial' and whether she agreed to waive that right and have the trial judge 'sitting alone, decide the case' does not affirmatively show that Jones understood the nature of the right to a jury trial she was relinquishing." (*Jones*, *supra*, 26 Cal.App.5th at p. 423.) Moreover, "the record does not show whether Jones's attorney ever discussed with her the nature of a jury trial, including for example, that the jury would be comprised of 12 of her peers from the community.  Further, the trial court did not specifically advise Jones that she had a right to a jury trial, instead only asking her, '[D]o you understand your right to a jury trial?'" (*Id.* at p. 435.)

The appellate court continued:  "Because the trial court did not advise Jones as to the specific rights she would be giving up or inquire if her attorney explained those rights to her, her bare acknowledgment that she understood her right to a jury trial was inadequate." (*Jones*, *supra*, 26 Cal.App.5th at p. 436.)  "Jones had no experience with the criminal justice system.  Neither the information nor the probation report reveals a prior criminal charge." (*Id.* at p. 437.)

The present case is distinguishable from *Jones*.  Here, the trial court specifically advised appellant that he had a right to a jury trial before "12 people from the community."  In contrast to *Jones*, appellant's counsel said he had discussed the issue of a jury trial with his client, and appellant did not contradict counsel on this point.  Finally, while "Jones had no experience with the

13

criminal justice system," appellant had been previously convicted of felony assault with a deadly weapon or instrument (§ 245, subd. (a)(1)) and had been previously committed as an MDO.[5] (*Jones, supra*, 26 Cal.App.5th at p. 437.)

*Conclusion*

Our Supreme Court's recommendation of an extended jury advisement/waiver colloquy is to be applauded. (*Sivongxxay, supra*, 3 Cal.5th at pp. 169-170.) But the recommendation is not a straitjacket to be used in the pursuit of perfect justice. (See Fleming, The Price of Perfect Justice (1974).) ""Matters of reality . . . should be controlling."" (*Sivongxxay, supra*, 3 Cal.5th at p. 170.) Matters of reality here confirm that appellant knowingly and intelligently waived his right to a jury trial. (See *United States v. Ruiz* (2002) 536 U.S. 622, 629 ["the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it"].)

"[I]n various contexts in which [our Supreme Court has] been called upon to ascertain whether a waiver of constitutional rights was knowing and intelligent, [the court has] not focused myopically on the waiver colloquy in isolation, but instead [has] conducted a more comprehensive assessment of the totality of the circumstances. [Citations.] . . . [H]ere the relevant circumstances include not only the colloquy, but also . . . the fact that [appellant] was represented by counsel." (*Sivongxxay, supra*, 3 Cal.5th at p.

_____

[5] The record does not indicate whether appellant pleaded guilty to the felony offense or was tried by the court or a jury.

14

173, fn. 8.)  Additional relevant circumstances are that counsel discussed the jury waiver with appellant, that appellant had been previously convicted of a felony offense, and that appellant should have been familiar with the MDO commitment procedure because this was a recommitment, not an initial commitment. We "uphold the validity of [the] jury waiver" because ""'the record *affirmatively* shows that [the waiver] is [knowing] and intelligent under the totality of the circumstances.'"" (*Daniels*, *supra*, 3 Cal.5th at p. 991 (lead opn. of Cuéllar, J.).)

*Disposition*

The order recommitting appellant for treatment to the Department of State Hospitals as an MDO is affirmed.

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.


I concur:


PERREN, J.


15

TANGEMAN, J., Dissenting:

I respectfully dissent. There has been no affirmative showing of a knowing, intelligent, and voluntary waiver. The majority acknowledges the framework established by our Supreme Court in *People v. Sivongxxay* (2017) 3 Cal.5th 151 (*Sivongxxay*) but applies the pre-*Sivongxxay* framework to presume a valid waiver where none is shown.

Our Supreme Court in *Sivongxxay*, *supra*, 3 Cal.5th at page 169, recommended "that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Ibid*.)

Here, the trial court did not mention any of the benefits of a jury. It provided only two of the four recommended *Sivongxxay* advisements—that a jury is made of "12 people from the community" and that the alternative to a jury trial "would be a judge trial." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169; see *People v. Jones* (2018) 26 Cal.App.5th 420, 436 [that the trial court only provided one *Sivongxxay* advisement (i.e, that the judge alone will decide the defendant's guilt or innocence) suggested that the jury trial waiver advisement was inadequate].) The court completely omitted the two advisements that are clearly the most important from appellant's perspective—that appellant's lawyer could participate in jury selection, and that, once selected, all 12 jurors would have to unanimously agree to render a verdict recommitting him as an MDO. Of the four recommended

1

advisements, these are the two that provide the greatest protection and give the most meaning to the constitutional jury trial right—yet the majority ascribes no meaning to them at all.[1]

The colloquy here was also deficient for other reasons. The *Sivongxxay* court did not limit its recommendations to the four advisements. It also "emphasize[d] the value of a robust oral colloquy in evincing a knowing, intelligent, and voluntary waiver of a jury trial." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169.) To that end, the court "recommend[ed] that the trial judge take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails. A trial judge may do so in any number of ways—among them, by asking whether the defendant had an adequate opportunity to discuss the decision with his or her attorney, by asking whether counsel explained to the defendant the fundamental differences between a jury trial and a bench trial, or by asking the defendant directly if he or she understands or has any questions about the right being waived." (*Id*. at pp. 169-170.)

Here, the court asked no such questions to ensure that appellant understood "what the jury trial right entails" or "the fundamental differences between a jury trial and a bench trial." It made no inquiry about appellant's understanding of his rights, or whether he had an adequate opportunity to discuss his jury trial right with his attorney. Instead, the record shows that the court's only inquiry to appellant was when the court asked him if

---

[1] The majority nevertheless argues that the meager advisement given here was somehow "stronger" than the advisement given in *Sivongxxay*, where the trial court covered three, not two, of the four recommended advisements. (Maj. opn. *ante*, at p. 7.)

2

his attorney indicated that he wanted to waive his right to jury, to which appellant said, "[yeah]." (See *People v. Jones*, *supra*, 26 Cal.App.5th at p. 436 [failure to inquire whether the defendant understood the nature of her right to a jury trial, whether she discussed her decision with her attorney, or whether she had any questions showed that her "bare acknowledgement" in response to two of the court's questions was inadequate to ensure that she understood the nature of her rights].) These additional inquiries designed to ensure appellant's understanding of his rights were especially important under the circumstances. Appellant was appearing via Zoom and was not present in the courtroom. He suffered from schizophrenia and was exhibiting ongoing symptoms including "thought disorganization." He was refusing treatment, and was not taking his recommended dosage of medication.

The record provides zero evidence that appellant understood the nature of his constitutional right to a jury trial. Despite well-settled law to the contrary, the majority imposes on appellant the obligation to prove that he did not understand the meager advisement and waiver when it states that "[i]n the absence of such expert testimony [that mental illness impaired his ability to understand], we cannot infer that his ability was impaired" (maj. opn. *ante*, at p. 10). And so it infers that appellant's ability to understand was unimpaired, while ignoring expert witness testimony which directly rebuts that inference.[2]

---

[2] At the court trial, a forensic psychologist testified that appellant suffered from schizophrenia and that his condition was not in remission. The psychologist testified that appellant exhibited ongoing symptoms during an interview. Specifically, the psychologist testified that during the interview, she observed

Without supporting evidence, it infers that appellant was capable of understanding his constitutional right to jury and intelligently waived that right (despite expert witness testimony to the contrary); it infers that "defendant acknowledged that he had thoroughly discussed the jury waiver with his attorney" (maj. opn. *ante*, at p. 8); it infers that jury waiver resulted from "a tactical decision entered into by [appellant] after consultation with and advice from experienced and capable defense counsel" (maj. opn. *ante*, at pp. 8-9); and it infers that "appellant was familiar with MDO proceedings" (and presumably the jury trial right attached thereto) (maj. opn. *ante*, at p. 12).  It draws each of these inferences against appellant, thereby shifting the burden to appellant to prove otherwise.

The majority opinion is thus inconsistent with *Sivongxxay* and its emphasis on promoting a "robust oral colloquy" when ensuring a party understands their jury trial rights. (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169.)  Our caselaw has upheld waiver of a jury trial "only when the record affirmatively demonstrates it was knowing and intelligent," without placing the burden on a party to show his waiver was *not* knowing or intelligent.  (*People v. Daniels* (2017) 3 Cal.5th 961, 991 (lead opn. of Cuéllar, J.); accord, *id*. at p. 1018 (conc. & dis. opn. of Corrigan, J.).)

---

appellant exhibiting "symptoms," including "thought disorganization," "long pauses before answering questions," and appearing "distracted."  The psychologist "often had to repeat questions."

4

This case is like *People v. Blancett* (2017) 15 Cal.App.5th 1200, in which we reversed an MDO commitment order on the ground that Blancett's jury trial waiver was not knowing and intelligent. There, "[i]n a barebones colloquy, the court asked only if Blancett was 'okay' with a court trial instead of a jury trial." (*Id.* at p. 1206.) The "trial court did not inform Blancett that he had a right to a jury trial, nor did the court explain the significant attributes or mechanics of a jury trial." (*Ibid.*) The trial court did not inquire whether he "had sufficient opportunity to discuss the decision with his attorney, whether his attorney explained the differences between a bench trial and a jury trial, or whether Blancett had any questions about the waiver." (*Ibid.*)[3]

Courts are charged with ensuring that a party has full awareness of the significant attributes and mechanics of a jury trial, and the consequences of waiving that right—including that a party understands that they can participate in choosing jurors and that there must be unanimity amongst the 12 jurors so selected for a conviction. (*Sivongxxay*, *supra*, 3 Cal.5th at p. 166.) If all that is required for a valid jury waiver is representation by counsel, who states generally that they have "gone over [their] client's rights," and a barebones presentation of the choice between a "judge trial" and a trial by "12 people from the community," our Supreme Court's advisements in *Sivongxxay* mean very little. Here, the record does not "affirmatively show[]" that appellant's waiver was knowing, intelligent, and voluntary.

---

[3] As in *Blancett*, *supra*, 15 Cal.App.5th 1200, nothing in the record reveals that appellant had a criminal history in which he gained familiarity with jury trial waivers. The record reflects only a felony conviction and prior MDO commitment, with no mention of jury trial(s) or jury waiver(s).

(*People v. Blackburn* (2015) 61 Cal.4th 1113, 1136; *Sivongxxay, supra*, 3 Cal.5th at p. 170.)

NOT TO BE PUBLISHED.


TANGEMAN, J.

Rita Coyne Federman, Judge

Superior Court County of San Luis Obispo

_____

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.